| 13 | 247 |
|---|---|
| 51a | 186 |
| 13 | 247 |
| 150 | 310 |
| 13 | 247 |
| 153 | 16 |
| 13 | 247 |
| 90a | 487 |

# DAVID W. MAJOR *vs.* WESLEY HILL ET AL.

1. Where a debtor without the knowledge of his creditor conveys property to a trustee to secure the debt, it is valid, unless within a reasonable time after the fact comes to the knowledge of the creditor he disclaims it.
2. Where a debtor conveys property to a trustee, to secure specified debts after those debts are satisfied from the proceeds of the property, the balance, if any, should be appropriated in payment of such executions, as would have priority of lien upon the property.

## APPEAL FROM MONROE CIRCUIT COURT.

### STATEMENT OF THE CASE.

The appellant on 8th of October, 1842, filed in the Monroe circuit court, his bill in chancery against the appellees, and charged in substance as follows : That on the 12th of March, 1841, he had recovered a judgment in the Monroe circuit against William Haines for the sum of $695 61 cents with costs.   That on the 8th of April, 1842, judgments were entered before a justice of the peace of the county, in favor of various creditors of Haines, to the amount of $420.   That in the night of that day, in secret and in confederacy with Wesley Hill, Haines conveyed in trust five negroes, horses, jennies and oxen, to Wesley Hill and nine others, to pay certain debts therein specified, in order to hinder execution, and delay those creditors in collecting their debts; and that Hill proceeded before the execution of the deed to collect the property, and run it out of the county in the night, to prevent any levies of execution ; and

Haines delivered the instrument to the clerk in secret, and in the night time, and without the knowledge of all parties concerned, except said Hill. The complainant, on the 11th of April, 1842, sued out execution on his judgment, by which he made $400 of his debt out of real estate of Haines, and Haines having no other property but that contained in said deed to Hill and others, he failed to satisfy his debt. That executions on the judgments had before the justice, was promptly levied on two of the negroes in the deed, and 2 horses, and were sold by the officer, and purchased by the grantees of the fraudulent deed by their agent, having depreciated the sale by forbidding it, setting up their adverse claims, and threatening suits against the purchasers, making a fraudulent speculation in it. That the grantees subsequently sold the property thus acquired, and the other property in the trust deed; your orator setting up a claim to be satisfied, his execution, and giving notice thereof; that the whole of said property was worth $2200. He charges the debt secured by the deed fictitious and pretended, and where otherwise is incorrectly represented and overstated; that the deed is void in fact and law as to his claim, and unknown and unaccepted, until he had asserted his claim by execution. He makes the parties in the deed, and purchasers of the property parties, calls for answers and relief.

The answers of the defendants admit the deed of conveyance of the trust property, by Haines to them of his property, and of his having none other to pay complainant's debt, after the sale of the land, admit his judgment and the judgments by other creditors named; admit the possession by them, and sale of the property by them for their use under the deed; and admit an application of $160 to a debt of one of the defendants, Thomas Miller, not secured in the deed. They allege that the debts secured by the deed were real bona fide debts; that the deed was made and delivered to the clerk, and its after acceptance as legal and valid; that all sales made were fairly made and at full prices for the property. That there was no combination to procure the contracts or secure the property, and no fraudulent intent against complainant as a creditor or any other, but the intent of the maker was honest and bona fide, and they accepted in good faith to pay their honest debts upon application. The cause was heard, and upon a decree made dismissing complainant's bill, and the complainant filing his bill of exceptions confirming the evidence, on hearing which was allowed, appealed to the supreme court to reverse the decree of dismissal.

The complainant gave evidence of the suit by him against Haines, in which he obtained judgment of the deed of record of 8th April, 1842, by which he conveyed to outstanding creditors all his personal property subject to debts; also of seven judgments obtained before justice of the peace on 8th of April, 1842, of about $378 90, also of judgments of the 9th of April in favor of two creditors to amount of $33 52, also on the 15th another judgment amount of $8 00, before justices, against the debtor Haines. That Haines appeared personally before the justice on the 8th of April, and left the court before the judgments were all entered and executions issued, that the justice finished the executions and delivered them to the officer at one o'clock in the night of that day. All these executions of the 8th, 9th and 15th, were returned satisfied on the 27th of April. It was proven by two witnesses that Haines had stated to them, that complainant was a generous creditor, and that the money due him was for a loan of money at ten per cent. interest. It was proven that the same officer had, on the 8th, two executions from a justice's court for about $57 against Haines, and called on Haines, and Wesley Hill being present, and requested of Haines a list of property to levy them on. He promised to do so, and starting off with Hill, said he would soon return back to do it. He not returning, the officer went in search of him, and found him and Hill, in Mr. Sargeant's law office in Paris where Sargeant was writing. The doors were locked, and the windows blinded, and I left them at eleven o'clock at night. The creditors then required of the officer to go to Haines' house, two miles from Paris; and the officer was informed that Wesley Hill had gone towards Haines'. He proceeded to Haines' in the night, and found the negroes and horses taken and carried away. It was proven that Hill left Paris by Haines' direction, before the deed was closed; that he proceeded to Haines', took all the negroes and two horses, and carried them

over in the night time to Audrain county to a Mr. Perry's, where he left them. Haines living in Monroe county, some three miles off; that Perry lived in a sparsely settled country, and the road difficult to find, a south course from Haines', and Hill lived in Monroe county, eleven miles north east from Haines'. The officer had obtained all the executions on the judgment of the 8th, and with those two of elder date he went late at night from Paris to Haines' after the property. In the morning he made pursuit of Hill with the property, and meeting Hill on the way returning from Perry's, ascertained that he had taken them, and he claimed them under the deed from Haines. The constable proceeded, and seized two boys, slaves and horses. A trial was had of the right, a decision made in favor of the executions; a sale was had, and Mr. Gentry bid off the negroes at $420; and also the horses. The sale being forbid by Wesley Hill, who claimed the property as conveyed to him and others to secure debts, the whole of the executions in his hands were satisfied by these sales to upwards of five hundred dollars.

After the levy by the constable, a young man in the employ of Haines, who had with Hill brought the negroes to Perry's, carried the other two negroes back to Haines'. A few days after, they were brought back to Perry's by Haines for four or five days, until two of the persons, grantees in the trust deed, came and carried them away by Haines' order. The worth of the two negroes (boys) upon execution sale was about $600. It was proven that Haines said after the deed was made, that he had made it, not to prevent the payment of his debts, but to prevent a sacrifice of his property by his creditors; that he thought the parties in the deed would allow him to keep the property until he could raise produce and pay his debts, and thus save his property; that his intention was to keep off his creditors until he could make the money and pay them. This conversation was procured to be had by the complainant with Haines. Hill when he brought the negroes to Perry's, told Mr. Perry, that they had broke on Haines and that he wished to save himself; and Haines also said in his presence that he did not intend to wrong his creditors; he requested Mr. Perry to let the negroes stay at his house; for if the deed was broken, Majors, (the complainant) would take them, and he thought his friends would let him have the negroes, and he and they could sell them for better prices. The negroes and horses in August 1842 were sold by Thomas Miller for the grantees and creditors in the deed; at which sale Majors, the complainant, stated the nature of his claim by his judgment, and forbid the sale, and claimed the property as subject to his debt; the sale was had under the deed of all the property. It was proven that at the constable's sale in April 1842, that Thomas Miller observed to one bidder that he would buy a law suit; the bidder saying that he wanted a good bargain, ceased to bid. The remark seemed to the witnesses as jocular, but not so by another. It was proven that O. P. Gentry purchased in the property in April at constable's sale, giving a little over $400 for the two negroes, Jackson and Henry, and a trifle for two horses; that this was an arrangement between some creditors in the deed of which Gentry was one, that he should bid off the property in name of Thomas Miller, at whatever prices it sold: they were to give notes at twelve months, at ten per cent. for $537, the amount of the executions. For the amount of these executions, Gentry let Miller, Hill, and Jno. R. Smith, creditors in the trust, the two negroes he had bought, and they to pay of the executions. It was arranged that Thomas Miller having a debt of $160, not secured in the deed, he was to share it in the fund in proportion to $1200, the assumed indebtedness and security of the deed. That all the property was subsequently to be sold for cash, those paying the executions, reimbursed their money, and the residue be applied to pay their claims. It was proved by the constable, that at his sale, he sold the two negroes to Gentry for $500. He says one 18 or 19 years old, and was worth $500; and the other $400.

It was proven that Haines had no property after the sale of his land to pay Majors, (the complainant's) debt, except the property claimed by the parties and embraced in the deed spoken of. It was proven that Haines brought into the clerk's office two hours after midnight, on the 8th of April 1842, the deed to Hill and others. He came alone and acknowledged it, and it remained some two weeks there.

32

For defendants, it was proved that the land of Haines, sold under Major's (the complainant's) execution, was worth $500, and the negroes mortgaged some $1600. That the valued assessment of Haines' land by the assessor had been $775. It was proven by the clerk of the county court, that Haines was liable to the county for a considerable amount, for which some of the mortgages were security, and those debts were cancelled and paid by those mortgagees. That the sale by the grantees of the property was public, and notice generally given by advertisement.

That Thomas Miller was the acting trustee, and that he had collected and paid over the whole amount of the debts secured to the creditors by the deed, and also a further sum to said Thomas J. Miller, not secured by the deed. It was proven that at the rendition of the judgments on the 8th of April 1842, Wesley Hill was present, and seemed very anxious that Haines should make him secure for debts he was bound as his security, and that Snell, Caldwell, and other creditors expressed to Haines their opinion that he ought to secure him and his other securities; and Haines seemed to show some reluctance. It was proven that at the date of Major's judgment and after Haines was considered in failing circumstances, that at the time of the sale of Haines' land under Major's execution, Gentry and Miller, bid for the land; that about thirty acres improved, and the house was on Congress land; that Major's purchased, but he did not want the land.

This was all the evidence given by either party. The complainant after decree, prayed an appeal to this court, which was granted, and he seeks a reversal of the decree.

## Todd for appellant.

1st. That the deed was made secretly.

2nd. That the consideration was inadequate, and the whole property, owned by the debtor was conveyed by it.

3d. That the acts of Hill for the creditors in trust, was fraudulent, secret, and his removal of the property evidence fully of fraud; and for his acts they are responsible.

4th. The declarations of the grantor and Hill, relative to the object, is conclusive to prove fraud; it was to save the property from sacrifice. They were to assist Haines in selling the property, and to debar creditors from levying on it.

5th. That the property conveyed remained in possession of the debtor. See authorities 1 J. C. R. 482; 7 Mo. Rep. 245; 5 Mo. Rep. 484; 4 Bibb 466.

## Kirtley for appellees.

1st. I rely that the decree is right, and cannot be reversed in this court, upon the evidence in the record.

2nd. The facts being found by the court, and no motion for a new trial, this court cannot now reverse the decision. See 4 Mo. R. 456, Swearengen vs. Newman's Adm'r. ; 4 Mo. R. 623, Cook vs. Davis; 11 Mo. Rep. 623, Rhodes vs. White.

Judge BIRCH delivered the opinion of the court.

We perceive nothing in the record of this case sufficient to fix a fraudulent intention upon any of the parties to the conveyance of the 9th of April, 1842. As the law stands, a debtor has the right thus to discriminate amongst his creditors, and that is the utmost which is apparent upon the face of the conveyance and from an analysis of all the testimony which was taken with a view to elucidate the transaction.

Under the circumstances presented, the delivery of the conveyance for record was substantially a delivery by A. to B. for the use of C. and is sanctioned by the earliest authorities. 3 Coke, 27. 1 Shep. Touch, 58. It cannot, therefore, be regarded otherwise than as having pledged the property thereby transfered, and placed in the possession of one of the beneficiaries in the trust, to the uses designated, and that such an arrangement was valid unless disclaimed or disaffirmed within a reasonable period by some act of the mortgagor. That is so far from being pretended here, that the contrary impliedly appears in the seasonable (however invalid) arrangement they entered into with a view to discharge the prior incumbrances of the justices executions.

The only question, therefore, upon which we find ourselves in disagreement with the court below, has relation to the sum which it appears from the testimony was retained by Miller out of the proceeds of the sale of the property, on account of a judgment debt due to himself, but not included in the mortgage or otherwise carried to the dignity of a lien, as the complainant's was, by execution. To this sum, or to whatever amount was ultimately realised from the sale of the mortgaged property, over and above the debts secured by the justices judgments and the mortgage deed, and not exceeding the debt remaining due to the complainant, it would seem that in virtue of his execution, and the continuous and open claim which he set up under it, he was equitably entitled. This, of course, presupposes, that the arrangement and conduct of Miller, and of Hill imparts too much the appearance of unfairness, if not collusiveness, to the sale by the constable, to permit it to stand against the rights of meritorious third persons.

The circuit court erred in dismissing the bill of the complainant, instead of ascertaining the net excess of proceeds which came to the hands of Miller, who seems to have acted as a kind of agent or trustee under the deed, and decreeing the complainant, the payment of that sum, with interest, as so much upon his judgment against Haines.

Its decree is therefore reversed, and one will be here entered in conformity with the foregoing opinion.