Hagerman v. Sutton.

HAGERMAN, *Appellant*, v. SUTTON.

1. **Married Woman**: NOTE: MORTGAGE.    While the act of a married woman, who, in conjunction with her husband, signs a note and executes a mortgage, to secure the same, on her land, not being a part of her separate estate, is not valid and binding on her as to the note, it does not follow that the mortgage is invalid.

2. ———: MORTGAGE OF LAND NOT HER SEPARATE ESTATE.    It is competent for a married woman to so mortgage her land of which she is not seized as her separate estate.

| 91 | 519 |
| 96 | 400 |
| 96 | 664 |
| 32a | 222 |

| 91 | 519 |
| 41a | 425 |

| 91 | 519 |
| 42a | 658 |

| 91 | 519 |
| 103 | 416 |

| 91 | 519 |
| 110 | 641 |
| 111 | 212 |
| 111 | 627 |
| 112 | 514 |
| 49a | 50 |
| 49a | 147 |

| 91 | 519 |
| 113 | 550 |
| 114 | 474 |
| 117 | 109 |
| 117 | 150 |

| 91 | 519 |
| 118 | 490 |

| 91 | 519 |
| 57a | 172 |
| 60a | 308 |

| 91 | 519 |
| 63a | 444 |
| 63a | 614 |
| 64a | 43 |
| 64a | 184 |

Hagerman v. Sutton.

3. ———— : FORECLOSURE OF MORTGAGE. And where the husband died and the mortgage debt thereafter matured, she was properly made a party defendant in the suit for foreclosure. R. S., sec. 3305. (Overruling *Fithian v. Monks*, 43 Mo. 502).

4. ———— : ————. Nor does the fact that the foreclosure judgment contained a general deficiency clause, in the nature of a personal judgment against her, render the judgment void as to the foreclosure part of it, or invalidate the sale thereunder of the mortgaged property. (*Ibid*).

5. Mortgage: PURCHASE OF NOTE. One purchasing a note secured by a mortgage takes the latter as an incident to the note.

6. ———— : NOTE, TRANSFER OF. Where the note is transferred before due, the purchaser takes it with all the presumptions in his favor of want of notice on his part, of any secret claims or trusts attached to the note in favor of third persons, and the mortgage passes on the same footing as the note.

7. Note, Purchase of. Where one purchases a note in good faith, and before due, he cannot be affected by any subsequent notice of claims of third persons on the note.

8. Mortgage, Release of by Transferer of Note. The transferer of a note has no authority, after its transfer, to release the mortgage executed to secure it.

9. Notice : CLAIM OF TITLE. Where a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to have knowledge of the fact. So the purchaser is in like manner supposed to have knowledge of the instrument under which the party with whom he contracts as executor, trustee, or appointee, derives his power.

*Appeal from Schuyler Circuit Court.*—HON. NAT. M. SHELTON, Special Judge.

REVERSED.

*James Hagerman* and *Anderson, Davis & Hagerman* for appellant.

(1) The court erred in its declaration of law and in basing its judgment on the ground that Mrs. Gray was married when she executed the note. She was unmarried when sued, and when the decree was taken, she was competent to defend. *Yeoman v. Younger*, 83 Mo. 424;

Hagerman v. Sutton.

*State ex rel. v. Rainey*, 74 Mo. 229 ; *Bernecker v. Miller*, 44 Mo. 111 ; *Reed v. Vaughan*, 15 Mo. 137 ; *Wellshear v. Kelly*, 69 Mo. 343. (2) The sale, not taking place by virtue of the general deficiency clause of the judgment, but because of the foreclosure as to the specific property involved in this suit, must be sustained as valid. *Hoskinson v. Adkins*, 77 Mo. 537. Even if the personal part of the judgment be void, that does not avoid the part which forecloses the mortgage. *Holton v. Turner*, 81 Mo. 360 ; *Wernecke v. Wood*, 58 Mo. 352 ; *Lennox v. Clarke*, 52 Mo. 115. (3) The power of attorney did not describe the mortgage, and, therefore, the court erred in admitting the release, by Baker, entered on the margin of the record. (4) The release was also improperly admitted because the answer conceded that the misdescription in the power of attorney avoided the release, unless corrected. Instead of the " northeast quarter of southeast quarter," it described the " northeast quarter of southwest quarter." The court was asked to correct the mistake. No rule is better settled than that courts of equity will not correct mistakes when the property has passed to innocent parties. *Young v. Coleman*, 43 Mo. 170 ; 2 Pomeroy's Eq. Jur., sec. 776 ; 2 Story's Eq. Jur. [12 Ed.] sec. 139. Here the undisputed evidence showed that plaintiff never knew of any mistake, or of any claim of a mistake, until after he purchased. (6) There was no mistake as a matter of fact. (7) If the court holds the decree of foreclosure valid, that the release of Baker was invalid, as against plaintiff, or that there was no mistake in description in the power of attorney, then we are entitled to judgment in this court, and there is no need of remanding the case.

*Higbee & Raley* for respondent.

(1) Sutton bought on the faith of Downing's release, who was the record owner of the note and mortgage. He is, therefore, entitled to the protection of the

record.    Jones on Mortgages [2 Ed.] secs. 811, 837, p.
678 ; *Lewis v. Kirk*, 28 Kan. 497 ; Tiedeman Real
Prop., sec. 340, p. 264, and cas. cit. ; *Williams v. Jackson*, 107 U. S. [17 Otto] 478 ; *Williams v. Jackson*, 17 Cent.
Law Jour. 148.    (2) The judgment of foreclosure, being a
personal judgment at law upon the obligation of a married woman, was void.    *Fithian v. Monks*, 43 Mo. 502 ;
*Hoskinson v. Adkins*, 77 Mo. 537 ; *Musick v. Dodson*,
76 Mo. 624, 625.

SHERWOOD, J.—Ejectment for northeast quarter of
southeast quarter of section 1, township 66, range 15, in
Schuyler county, Missouri:

In 1871, Mary E. Gray was seized in her own right
of the property in suit, as well as of other real estate.
She joined with her husband in executing a promissory
note and mortgage to Downing, the mortgage embracing
the land in controversy, as well as other lands.    The
note had five years to run, was negotiable in form, and
was transferred, as Downing testified, immediately after
execution for value to plaintiff.    In November, 1872,
Mary E. Gray and husband executed a bond for a deed
to defendant for the land now in controversy, the bond
being recorded on the day of its execution.    Afterwards,
on the eighth of March, 1873, Downing executed a
power of attorney to John Baker, authorizing him to
release a mortgage on the Schuyler county record, state
of Missouri, wherein James M. Gray and wife are mortgageors, and Wm. G. Downing, mortgagee, as to the
northeast quarter of the *southwest* quarter of section 1,
township 66, range 15.    This power of attorney was
acknowledged and recorded on the day of its execution,
and on the same day a release was entered on the margin of the record of the Gray mortgage, as follows : " I,
John Baker, attorney in fact for Wm. G. Downing, do
hereby release the northeast of the southeast quarter of
section 1, township 66, range 15, as described in this
mortgage, this eighth of March, 1873.    John Baker."

An objection to the introduction of this release in evidence was made by plaintiff, on the ground that the same was made after he had purchased the note and mortgage, and because Baker had no power to make the same; but this objection was overruled, and the point saved. On the twenty-sixth of March, Gray and wife conveyed the land in suit, correctly described, by general warranty deed, to defendant, and this deed was put to record May 6, of that year.

Defendant, on his part, testified that he bought the land through Richardson, at five dollars per acre; paid one hundred dollars when title bond was executed, the bond being made because the land was mortgaged. Afterwards he paid the other half of the purchase money, relying on the statements of Richardson and Baker that Downing told them that he still owned the note and mortgage, and relying on the statement of Baker that he had released the land from the mortgage, showing him, at the same time, the entry of release already mentioned; but defendant, also, admitted that the northeast quarter of the southwest quarter belonged to himself and Graves. This land is the same as that described in the power of attorney from Downing to Baker. Defendant stated that he took possession of the land in suit eleven years before the trial of this action, and as this trial occurred in November, 1883, presumably, he took possession in 1872, when the title bond was made. After taking possession, he fenced the land, cleared it, paid taxes from the time he bought the land up to 1882, and never heard of plaintiff's claiming it, until the present action was brought.

Plaintiff testified that he resided in Keokuk, Iowa, and bought the note in 1871 or in 1872, in good faith, in the ordinary course of business, and had never heard of any claim that Downing had given Baker a power of attorney to release the land in controversy, until after receiving the sheriff's deed at the foreclosure sale. This

occurred in October, 1877. Before the suit for fore-closure was brought, James M. Gray died, and Mary E. Gray, remaining unmarried, was duly served with pro-cess, and was the sole party defendant against whom the judgment of foreclosure was rendered. At the con-clusion of the judgment is the usual general deficiency clause, where a mortgageor is personally summoned ; but only the property mortgaged was sold. Mrs. Gray is the common source of title.

The answer of defendant, in substance, charged that the power of attorney from Downing to Baker, owing to a mistake of the scrivener, failed to properly describe the land, asked for reformation, charging the plaintiff with knowledge, at the time he purchased the note from Downing. The reply denied all notice, and claimed that the purchase of the note was made in good faith, and prior to maturity, etc. As to the release, Downing's testimony shows that he never intended to release any of the land, mortgaged by Gray and wife to him, but only to release from the mortgage a forty-acre piece, which was said to be inadvertently inserted therein, and did not belong to Mrs. Gray.

On this point there was conflict in the testimony. When the evidence was closed, the court gave the fol-lowing declaration of law:

"That plaintiff cannot recover herein, because the decree of foreclosure offered in evidence, and set out in paragraph three of plaintiff's evidence, was void, for the reason that Mrs. Gray, the defendant therein, hav-ing been a married woman at the time the note and mortgage were executed."

Thereupon, plaintiff excepted, and comes here by appeal. I have thus briefly outlined the testimony as prefatory to the discussion of the points presented by the record.

I. Under the ruling made in *Musick v. Dodson*, 76 Mo. 624, the act of Mrs. Gray, in signing the note in

conjunction with her husband, she not being possessed of a separate estate in the land granted, gave her act validity neither in law nor equity. But it does not thence follow that, because this is so, the mortgage of her land, which she joined her husband in executing, was null. It was perfectly competent for her thus to mortgage her land. *Wilcox v. Todd,* 64 Mo. 388. And when her husband died, and the mortgage debt matured, she was properly made the party defendant to the suit for foreclosure, and the result of such a suit would ordinarily be to cut off her equity of redemption as effectually as if she had been discovert at the time the note was executed. Of course, she could not properly be made personally responsible for the debt, but her land was bound by the mortgage for the note and interest, and the statute authorized her, as the mortgageor, to be sued, and her equity of redemption foreclosed. R. S., 1879, sec. 3305.

With the exception above noted, the judgment of foreclosure is in usual form, and cannot be regarded as a personal judgment against her, except the general deficiency clause, already noted. Does this clause render the judgment void, in so far as to affect plaintiff's title, acquired under another clause of that judgment? I am not of the opinion that it does, and these are my reasons : There was no sale made under the foreclosure proceedings except of the property mortgaged. In *Fithian v. Monks,* 43 Mo. 502, which is erroneously mentioned as a judgment against *a married woman,* the judgment, one of foreclosure, was collaterally attacked, but there, Mrs. Fithian was not a mortgageor, but only the grantee in a deed poll made by Bernard to her, wherein it was stated that she had assumed, as a part of the consideration for the premises, to pay off the incumbrance, and it was adjudged that, notwithstanding that Mrs. Fithian had been personally served with process, that such relief was expressly

asked for in the petition, that judgment should go against Bernard, the mortgageor, and Mrs. Fithian, if the mortgaged premises should be insufficient to pay the mortgage debt, yet, that the proceeding, being simply one *at law*, for the foreclosure of a mortgage, and Mrs. Fithian *not being a mortgageor*, the court had *no jurisdiction* to render a judgment against her, *personally*, though it had a general jurisdiction as to matters of both law and equity, and had a special jurisdiction at law, under the statute, yet, that it had no authority, under the constitution and laws of this state, to take cognizance of such a cause and grant such relief, and that *such portion* of the judgment was a nullity, and no title passed by a sale of her land not included in the mortgage. The clear intimation given in that case is, that the *residue* of the judgment, *though at law*, was valid, so that, applying the principle of that case to the one at bar, the foreclosure sale should be held valid, for here, only the mortgaged premises were sold, and, besides, Mrs. Gray was a mortgageor, and the only mistake made was in that portion of the judgment which allowed other land of hers to be sold, a portion which was never enforced by execution.

In *Massey v. Scott*, 49 Mo. 278, a general judgment was rendered in an attachment suit, where the only service was by publication, and it was ruled that the jurisdiction of the court to render judgment against the attached property was complete, and though the judgment which should have been *special* was a *general* one, and was, therefore, informal, yet, that it was valid, until set aside or reversed, and was such a judgment as the court would correct by entry *nunc pro tunc*, and the execution having gone only against the attached property, property over which the court had acquired jurisdiction, that neither the judgment nor the sale thereunder could be overthrown by collateral attack.

So, too, in *Hardin v. Lee*, 51 Mo. 241, a judgment rendered in attachment proceedings, the service being by publication, was assailed as void, because the judgment was for a sum in gross, the attachment having been sued out for taking personal property, and also for personal injuries, the law, at that time, not permitting an attachment on the latter ground, but it was ruled that the judgment, though "grossly erroneous," was not void, the court having jurisdiction of the subject matter, and having acquired jurisdiction in the special case by the method pointed out by the statute.

The like principle was maintained in *Lenox v. Clarke*, 52 Mo. 115, where two persons were sued, but one of them served, and joint judgment against both, where it was held, that, although the judgment was void as to the party not served, yet, it was valid as to the party served, and his property only having been sold, that the sale was impregnable to collateral attack.

A more recent case illustrates the same principle, of a judgment being void as to one defendant, yet, valid as to the others, when attempted to be overthrown by collateral attack, as well as the sale made thereunder, where the land only of such others was ,sold. *Holton v. Towner*, 81 Mo. 360. I take it that no sound distinction can be made between the invulnerability of a judgment to collateral attack, when erroneous as to one of two defendants ; and where erroneous in some other particular, where such error does not go to the extent of invalidating the very jurisdiction of the court, upon which jurisdiction the validity of the judgment and title aforesaid rest. In a word, error and nullity are not legal equivalents or synonyms. A judgment may be so erroneous as to be null, but it is not necessarily null because erroneous. It may be null as to some particular person, or null as to some particular clause, yet, if enforced only as to those persons upon whom service has been had, or enforced as to those particular and

Hagerman v. Sutton.

independent clauses, confessedly valid, no ground will exist for destroying, by a collateral attack, the whole judgment and all subsequent proceedings based thereon.

II.   By the foregoing remarks I am not to be understood as impeaching, in any point or particular, the entire validity of the judgment of foreclosure now in question.   That the court had jurisdiction over the general subject matter of the foreclosure of the mortgage, cannot be denied ; that, by the service of its process, it brought Mrs. Gray before it, and thus subjected her to that general jurisdiction, is equally undeniable ; that it had power to render judgment against her as mortgageor the statute already cited is express ; but, undoubtedly, it erred in holding her personally liable for any deficiency which might arise in case her land, which she had mortgaged, failed to satisfy the debt her husband had contracted, and which she had no capacity to contract. But does this error, palpable though it is, oust the jurisdiction of the court and prevent that clause of the judgment from being enforced ?

The answer to this question is forcibly expressed by Senator Seward, in *Duvis v. Packard*, 10 Wend. 71, where he says : " The power to decide correctly and to enforce a decision when correctly made, necessarily implies the same power to decide incorrectly and to enforce a decision when incorrectly made."

An answer is also furnished by the Supreme Court of Ohio, in *Lessee of Paine v. Moorland*, 15 Ohio, 435, saying : " The distinction is between a lack of power or want of jurisdiction in the court, and a wrongful or defective execution of the power.   In the first instance all acts of a court not having jurisdiction or power, are void, in the latter voidable only.   A court, then, may act (1) without power or jurisdiction, (2) having power or jurisdiction, may exercise it wrongfully ; or (3) irregularly.   In the first instance, the act or judgment of the court is wholly void, and is as though it had not been done.

The second is wrong, and must be reversed upon error. The third is irregular, and must be corrected by motion. The latter is where the power is rightfully exercised, but in an irregular way. Hence, there is a vast distinction between a defect of power, a wrongful exercise of power, and an irregular exercise of power."

The question is answered by the language of the court, in *Colton v. Beardsly*, 38 Barb. 51, that: "The test of jurisdiction is, whether the court has power to enter on the inquiry, and not whether its decision is right or wrong."

It is answered in *Wertheimer v. Boonville*, 29 Mo. 258, where an ordinance prohibited in certain circumstances the purchase of "*wild game.*" Wertheimer bought "*fresh fish,*" and was fined five dollars by the mayor, and as no appeal lay in cases of that sort, except the fine exceeded that sum, the Cooper common pleas awarded prohibition to prevent the collection of the fine, on the ground that the mayor had no jurisdiction to impose a fine on Wertheimer; but, in delivering the opinion of the court in reversal of the judgment, Scott, J., said : "It is unnecessary to determine whether fresh fish is wild game, or whether the mayor exceeded his authority in punishing the plaintiff for purchasing fresh fish out of the market place during market hours. * * * It is hard to conceive how the question of jurisdiction can be made to depend on the fact whether the judgment was right or wrong. The mayor unquestionably has authority to decide whether the ordinance had been violated, and after he has determined it how can it be said he had no jurisdiction? According to the argument the court had to decide the case before its jurisdiction could be ascertained. If it was of opinion in favor of plaintiff, it had jurisdiction; if of opinion against him, it had none."

The question is answered by *O'Reilly v. Nicholson*,

VOL. 91—34

45 Mo. 160, Bliss, J., saying: "A judgment though informal, even to the extent of granting a relief not contemplated in the petition, when the parties are before the court and the relief is within its jurisdiction, is not a void proceeding."

The question is answered by *Gray v. Bowles*, 74 Mo. 419, where it was ruled that though the law did not authorize a judgment on a special tax-bill, except as against each particular lot, yet that a judgment *in solido* against several lots for the aggregate amount of the tax-bills, due on all said lots, was, although erroneous, yet not void, because rendered by a court having jurisdiction of the person and of the subject matter.

It is answered by *Hoskinson v. Adkins*, 77 Mo. 537, where it was ruled that, where husband and wife were notified by publication of foreclosure proceedings, but the deed was not acknowledged before an officer capable of taking the acknowledgment, and in consequence of this the title of neither the wife nor husband passed, yet that the foreclosure proceedings were not subject to collateral attack, and were good as a basis of an ejectment brought by the purchasers from the husband and wife.

The question is also answered by the case of *Chase v. Christianson*, 41 Cal. 253, where it is said: "It is not the particular decision given which makes up jurisdiction, but it is the authority to decide the question at all. Otherwise all distinction between erroneous exercise of jurisdiction on the one hand and the total want on the other must be obliterated."

These extracts abundantly show that the rule laid down in the case of *Fithian v. Monks*, *supra*, is at variance with the great current of authority, both in this state and elsewhere, in that it fails to make the readily observable distinction between jurisdiction to act in a given cause, and the erroneous exercise of such jurisdiction; and I am of opinion that the rule there announced

should no longer be followed. In the case under con- sideration, the court, when trying the foreclosure proceedings, was invested with full authority by the law of its organization to try causes of that nature, this constituted its general jurisdiction over the subject matter of the action; by its process it brought Mrs. Gray within the purview of its power, thus making up the sum total of the authority to act in that particular case, to-wit, jurisdiction. That in the exercise of the power conferred by the law of its organization, and by the service of its process it erred in holding Mrs. Gray personally responsible for a debt she never contracted, and was indeed incapable of contracting, does not go a hair towards impairing or impeaching its jurisdiction to make that erroneous ruling; jurisdiction being acquired error could not oust it, although that error consisted in granting a relief not warranted by law. So much for the judgment of foreclosure.

III. The next point for consideration is the effect of plaintiff's purchase of the note, which was secured by the mortgage. When plaintiff purchased the note, the mortgage passed with it as an incident thereto. This has been the rule since an early day in this state. *Laberge v. Chauvin*, 2 Mo. 180; *Anderson v. Baumgartner*, 27 Mo. 87; *Mitchell v. Ladew*, 36 Mo. 526; *Watson v. Hawkins*, 60 Mo. 550; *Joerdens v. Schrimpf*, 77 Mo. 383; *Boatmens Savings Bank v. Crewe*, 84 Mo. 477. And when a note is underdue, when transferred, and is negotiable, the presumption arises of want of notice, which presumption holds good till countervailing proof be made. The mortgage being the incident partakes of the negotiability of its principal, to-wit, the note, without any formal assignment or delivery, or even mention, of the former. But for the note, the mortgage never would have existed; it owes its birth and being to the note, and ceases to exist when the latter is discharged. At the outset of his case, then, plaintiff

started with the presumption before mentioned in his favor; *prima facie*, he took the mortgage as he took the note upon the same footing of equality and with the same rights that equity accords to both instruments. *No hidden lien, undisclosed priority, or secret trust, between Downing and any third person, could affect his interests or prejudice his claims to full satisfaction out of the mortgaged premises. He took the mortgage as he took the note. Carpenter v. Longan*, 16 Wall. 271, and cases cited; 1 Daniel Neg. Instr., secs. 834, 834*a*, and cases cited; 1 Jones Mortg., sec. 834; *Lewis v. Kirk*, 28 Kan. 497, and cases cited.

Now was there anything, apart from the transaction between Downing and the plaintiff, any matter of record, or matter *in pais*, to cast notice upon the latter at the time of his purchase of the note? He says that he bought the note and mortgage in 1871, or 1872. Taking the latter year as the correct date, and there is nothing in the record showing a later date for the purchase; taking it that such purchase was subsequent to the time when the title bond from Gray and wife to Sutton was put to record, was there anything in this in the nature of a *caveat* to plaintiff not to purchase the note? Certainly not. All that such a matter of record could apprise him of, would be that the mortgageors had agreed to convey their equity of redemption in the mortgaged premises to the defendant; but this was not at all calculated to inform the plaintiff that any hostile right, or adverse claim, would be asserted against the mortgage, or tend to diminish the security which it afforded; its obvious and only tendency would have been to make known to him that the land, *cum onere*, had been transferred to another; that and nothing more.

IV.   And it is clear that the plaintiff, after his purchase of the note in good faith, and before due, could not be affected by any subsequent notice of defendant's

rights, even of the most positive character. *Leavitt v. LaForce*, 71 Mo. 353.

V. It is equally clear, under our statute, and under the rulings of this court, that after Downing parted with his title to the note it was out of his power to release any portion of the mortgaged premises. *Ewing v. Shelton*, 34 Mo. 518; *Joerdens v. Schrimpf*, 77 Mo. 383; *Lee v. Clarke*, 6 West. Rep. 205; s. c., 89 Mo. 553.

VI. But it is said that the present litigation is a contest between the "*innocent purchaser* of the mortgaged *land*, and the *innocent purchaser* of the *note*." The rulings already made in this opinion, show that if the plaintiff was the innocent purchaser of the negotiable note, which took the mortgage with it as its inseparable incident, causing it to partake of its own negotiability, and if, as already asserted, it was out of the power of the mortgagee, after transferring the note, to release or discharge any portion of the mortgaged premises, it is difficult to see how plaintiff and defendant could both occupy the attitude of innocent purchasers. But leaving out of view the points already discussed, in what way can the defendant lay claim to being an innocent purchaser of the land? "Generally, it may be stated as a rule on this subject that where a purchaser cannot make out a title but by a deed which leads him to another fact, he shall be presumed to have knowledge of that fact. So the purchaser is, in like manner, supposed to have knowledge of the instrument under which the party with whom he contracts, as executor, or trustee, or appointee, derives his power." 1 Story's Eq. Jur., sec. 400, and cas. cit. Applying this rule to the case at bar, the defendant must be presumed to have had knowledge of the power of attorney from Downing to Baker, and of its failure to describe the land in controversy, and cannot, therefore, be deemed an innocent purchaser.

For these reasons the judgment will be reversed, and a judgment for plaintiff will be entered in this court. All concur.

PER CURIAM.—On motion, the judgment is modified so as to reverse the judgment and remand same with directions to the circuit court to enter up judgment for plaintiff.