# GEORGE et al. v. SOMERVILLE et al., Appellants.

## Division One, December 12, 1899.

1. **National Banks:** MORTGAGE OF REAL ESTATE. When a note secured by a deed of trust on real estate is discounted by a national bank, the deed of trust, being a mere incident of the debt, passes to the bank along with the note and may afterwards be claimed and enforced by it, although the bank at the time it purchased the note did not know that it was secured by the deed of trust, and although by an Act of Congress national banks are forbidden to loan money on real estate security.

2. **Note:** MORTGAGE: INCIDENT OF DEBT. The equitable title to the mortgage follows the legal title to the note secured, from the maker to payee, and from the payee back to indorser if he when his liability becomes absolute pays the debt. And where the indorser after maturity paid a note which had been transferred by the payee to a national bank, and took up the note, it and the deed of trust securing it became the property of the indorser, even though the deed was not delivered to the indorser but had always remained in the hands of the original payee and was by him filed for record after the indorser had paid the note.

3. ———: ———: ———: INNOCENT PURCHASER: RELEASE OF SECURITY. And where the payee of the note afterwards by collusion with the trustee makes a deed releasing the mortgage and it is recorded, and the mortgagor again makes a mortgage to secure a loan from a trust company, the record showing title in the mortgagor, there is a case where one of two innocent persons must suffer for the .wrong. But if the holder of a note secured by a deed of trust releases that security without the consent of the indorser, he thereby discharges the indorser from his liability. So that if the mortgagor after having made the second mortgage makes a deed to the same payee, conveying all his title subject to the mortgage, and the payee conveys it to the same bank, and the bank, before the indorser had paid the first note, conveys it to the defendant without reservation and with express surrender of all right, the bank thereby absolved the indorser from all obligation to pay the note mentioned in the first mortgage, and when he afterwards did pay it the payment was a mere voluntary act, and hence he can not have the fraudulent release set aside.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

REVERSED.

*Lubke & Muench* and *Kerr & Tittmann* for appellants.

(1) Florida had the right to call upon defendants, Penny and Boucher, to release the deed of trust of record. He held and controlled it at the time, and their release was legally operative. The doctrine of subrogation could not be invoked by plaintiffs under the facts as disclosed by the evidence in the case. Grady v. O'Reilly, 116 Mo. 346; Bunn v. Lindsay, 95 Mo. 250. (2) At best, plaintiff's equity was a latent one, which can not be enforced against appellants, who were subsequent *bona fide* purchasers, without notice. Richards v. Griffith, 92 Cal. 492; Persons v. Schaeffer, 65 Cal. 79; Ahearn v. Freeman, 46 Minn. 156; Furnold v. Bank, 44 Mo. 336; Logan v. Smith, 62 Mo. 455. (3) Respondents, if they relied upon the security of the deed of trust, should have taken it out of Florida's control, or should have taken such steps as would have been sufficient to preserve to them the security of the deed of trust. Having failed in this they are estopped as to appellants, who are subsequent purchasers, for value, and without notice. Anderson v. Baumgartner, 27 Mo. 80; Mitchell v. Ladew, 36 Mo. 526. (4) The deed made by Dickson to Curtis, January 21, 1893, at the instance of the bank and of Florida, also operated as a release of the deed of trust in controversy. In any view, it was sufficient to work an estoppel against the bank, and also against respondents, who subsequently took up the note at the bank. Joeckel v. Easton, 11 Mo. 119; Durette v. Briggs, 47 Mo. 356. (5) Appellant Somerville did not assume the payment of any of the encumbrances upon the property. The deed of Barr to Somerville simply recited that the encumbrances upon the property aggregated $28,000. In the absence of an express agreement

to pay encumbrances the grantee may contest their validity. Brooks v. Owen, 112 Mo. 251.

*T. K. Skinker* and *C. R. Skinker* for respondents.

(1) The release by Penny and Boucher was unauthorized and was inoperative against any person who might be or become the holder of the note. Lee v. Clark, 89 Mo. 553; Borgess Investment Co. v. Vette, 142 Mo. 560; Kelly v. Staed, 136 Mo. 430; Field v. Roanoke Investment Co., 123 Mo. 603; State Bank v. Frame, 112 Mo. 502; Hagerman v. Sutton, 91 Mo. 533; Rice v. McFarland, 34 Mo. App. 412; Lord v. Schamloefel, 50 Mo. App. 365; Cummings v. Hurd, 49 Mo. App. 147. (2) Plaintiffs obtained an interest in the deed of trust by virtue of their endorsement of the note. Salmon Falls Bank v. Leyser, 116 Mo. 78; Major v. Hill, 13 Mo. 247; Lake v. Bruton, 8 De G. M. & G. 440; Jones on Pledges, sec. 513. (3) When they paid it, they became entitled to enforce the security. Benne v. Schnecko, 100 Mo. 250; Campbell v. Pope, 96 Mo. 468; Berthold v. Berthold, 46 Mo. 557; Furnold v. Bank, 44 Mo. 336. (4) Florida did not retain control of the deed of trust; he had it recorded, and that was equivalent to delivery to the trustee for the benefit of all whom it might concern. Kane v. McCown, 55 Mo. 198; Ensworth v. King, 50 Mo. 482; Eau Claire Lumber Co. v. Anderson, 13 Mo. App. 434; Major v. Hill, 13 Mo. 251; Gorman v. Stanton, 5 Mo. App. 586; Moore v. Giles, 49 Conn. 570; Walton v. Burton, 107 Ill. 54; Alexander v. Alexander, 71 Ala. 295; Kerr v. Berme, 25 Ark. 234; Cecil v. Beaver, 28 Iowa, 241. (5) The deed of Dickson to Curtis, did not operate as a release of the deed of trust by merger or estoppel. Hospes v. Almstedt, 83 Mo. 473; Hospes v. Almstedt, 13 Mo. App. 273; Atkinson v. Angert, 46 Mo. 515.

VALLIANT, J.—This is a suit in equity to set aside a deed of release of a deed of trust. The facts of the case are

as follows: On July 22, 1892, one McDonald, being then the owner of certain real estate in the city of St. Louis, described in the petition, executed his promissory note for $5,500, payable six months after date to his own order, which he indorsed and delivered to one Alonzo K. Florida, and at the same time executed a deed conveying the real estate mentioned to defendant Penny in trust to secure the note, which deed was delivered with the note to Florida. The plaintiffs then at the request of Florida, for his accommodation, also indorsed the note; then Florida on July 29th, 1892, sold and delivered the note for value to the St. Louis National Bank. At the time the note was delivered to the bank it seems the bank knew nothing of the deed of trust, but took the note on the faith of the indorsements, but plaintiffs were informed when they indorsed it that it was secured by the deed of trust. This deed was never in the bank's possession, nor that of plaintiffs. The next day after the bank discounted the note, the deed of trust was filed for record; by whom it was delivered for record, does not appear, except by inference that it was Florida, as it was in his hands at last information. The defendant Boucher was named in the deed of trust as the party of the third part to whom the debt secured was due, but it does not appear that he ever really had any interest in it or that the note was ever in his possession; he was a mere employee of Florida and seems to have done his bidding.

On October 12th, 1892, while the note was still in the hands of the bank, Penny the trustee, and Boucher the nominal beneficiary, executed a deed referring to the deed of trust above mentioned, reciting that McDonald had paid the note therein secured and then formally releasing the deed of trust. This deed was recorded on the day of its date and is the gravamen of plaintiffs' petition. On October 10, 1892, McDonald executed five principal notes payable three years after date for $3,750 each, with interest notes to suit, and a separate deed of trust to secure each of said notes on several parcels of the

land above mentioned, which were duly recorded on October 12, 1892; these notes were payable to the order of Florida, who on the date last named, for value indorsed and delivered them with the deeds of trust securing them to the defendant, the Mississippi Valley Trust Co. Of these notes four sets have been paid, and one set is still held by the last named defendant unpaid. When the Mississippi Valley Trust Co. negotiated these notes it was on a certificate of title showing no prior encumbrance, and it had no notice of the deed of trust first above mentioned. On October 10th, 1892, McDonald executed another deed of trust on the real estate first above mentioned to secure a note of his to Florida for $5,500. This deed was recorded October 20th, 1892.

After the execution by McDonald of the above described deeds of trust he on October 11th, 1892, made an absolute deed conveying all the land mentioned to Florida subject to the incumbrances, which deed was recorded January 7, 1893. On January 9th, 1893, Florida and wife by deed of that date, filed for record the day following, conveyed the real estate to Joseph Dickson for the nominal consideration of $35,000; the real consideration was indebtedness to that amount which Florida owed the St. Louis National Bank. Dickson was the bank's attorney, and took the title in reality as trustee for the bank.

On January 21st, 1893, Dickson and wife, at the request of the bank, for the consideration of $45,000, executed a deed whereby they remised, released and quitclaimed unto Leroy P. Curtis the land above mentioned, without reference to any encumbrance. The *habendum* of this deed was: "To have and to hold the same with all the rights, immunities, privileges and appurtenances thereto belonging, unto the said party of the second part, and his heirs and assigns forever, so that neither the said parties of the first part, nor their heirs, nor any other person or persons for them, or in their names or behalf, shall or will hereafter claim or demand any right or title

to the aforesaid premises or any part thereof, but they and every of them shall by these presents be excluded and forever barred." This deed was recorded March 1st, 1893. The title conveyed by the last named deed passed by mesne conveyances to defendant Somerville to whom it was conveyed 29th April, 1893, and he now holds the same.

The second $5,500 deed of trust above mentioned, the one from McDonald to Florida's trustee of date October 10th, 1892, was foreclosed on the 21st of February, 1894, and Somerville became the purchaser at the foreclosure sale and holds that title also.

Returning now to the $5,500 note first mentioned, the one indorsed by the plaintiffs and discounted by the St. Louis National Bank; this note was not paid at maturity, but was protested and notice given the plaintiffs as indorsers. Afterwards Florida paid $500 on it; on March 1st, 1894, plaintiff George paid $1,000, and on April 15th, 1894, the plaintiffs Albert O. and Theodore T. Terry paid $4,550 to the bank in full and took up the note. This note was in the possession of the bank as owner from the day it discounted it, July 29th, 1892, until its payment by the indorsers as above stated April 15th, 1894, but the bank never had the deed of trust in its possession and seems to have had no knowledge of it; and it was never in plaintiffs' possession, but plaintiffs were informed of its existence at the time they indorsed the note although it was not then recorded.

Plaintiffs claim that the deed of Penny and Boucher of date October 12th, 1892, whereby they falsely recited that the note was paid and purported to release the deed of trust, was a fraud on their rights, and they bring this suit in equity to cancel the deed of release and reinstate the deed of trust. To give the plaintiffs the relief they claim would be to incumber defendant Somerville's land with plaintiff's debt; and make the deed of trust for $3,750 held by the defendant Mississippi Valley Trust Co. a second lien. The decree of the circuit

court was in favor of plaintiffs, and the cause is here for review on the appeal of the defendants Somerville and the Mississippi Valley Trust Company.

When the $5,500 note first mentioned was offered to the St. Louis National Bank for discount, the parties seem to have acted on the idea that because that was a national bank, forbidden by the act of Congress under which it was organized to lend money on real estate security, it could acquire no legal right to the security afforded by the deed of trust, and therefore Florida kept back the deed and offered the note on the credit of the indorsements, and the bank received it on that credit.

But the fact that it was a national bank that discounted the note did not affect the rights and liabilities of the parties differently from what they would have been if it had been a State bank. A national bank is forbidden to lend money on real estate security, but if it should violate that provision of its charter such violation would not affect the contract; it would only render the bank liable to a proceeding by the United States looking to a forfeiture of its charter or other disciplinary measure. If a national bank lends money on a note secured by real estate it may foreclose the mortgage as a State bank might. And when, as in the case at bar, the deed of trust is not delivered, nor the bank informed of its existence when it receives the note, nevertheless since the deed is incident to the note the security passes to the bank, and the bank may claim and enforce it when it is afterwards discovered. [National Bank v. Matthews, 98 U. S. 621; National Bank v. Whitney, 103 U. S. 99.] The national banking law therefore is of no influence on the rights of the parties in this case.

When the plaintiffs indorsed the note they became entitled to the security afforded by the deed of trust to the extent of their liability and of their discharge of that liability. That is to say, since their liability as indorsers was conditional, if those conditions were performed and their liability became ab-

solute, and they discharged it by paying the note, they would then become entitled to the security. A mortgage is an incident to the debt it is given to secure, and a transfer of the debt carries with it the security. [Hagerman v. Sutton, 91 Mo. 519; Mayes v. Robinson, 93 Mo. 114; Patterson v. Booth, 103 Mo. 402; Lanier v. McIntosh, 117 Mo. 508.] And this is so even though the mortgage is not delivered to the person to whom the debt is transferred (Kansas City Sav. Ass'n, v. Mastin, 61 Mo. 435); and "although he may not have given credit on the faith of it or known of it at the time." [Salmon Falls Bank v. Leyser, 116 Mo. loc. cit. 79.] The equitable title to the mortgage follows the legal title to the note secured; it follows it from maker to payee and from indorser to indorsee, and back again from indorsee to indorser, if the latter when his liability becomes absolute pays the debt. No one has a right to release the mortgage except the holder of the note at the time. [Hagerman v. Sutton, *supra.*] Therefore when McDonald indorsed the note and delivered it to Florida the deed of trust was Florida's to do with it as he chose so long as he held the note, but when the plaintiffs at his request indorsed it they acquired such an interest in the deed that they would be entitled to the security it afforded should they in due course be compelled to pay the note in conformity to their obligation as indorsers, and Florida then had no right to release it without the plaintiff's consent. But when he sold the note to the bank, he parted with all ownership or dominion over the deed; if he retained the deed in his possession he was simply the custodian of it for the use of the holder of the note; he owed a duty in regard to it, but had no interest in it except the contingent interest of an indorser who might thereafter be compelled to pay the note. He had no authority to do anything with it that would militate against the interest of the bank which was the owner or of the plaintiffs, who were indorsers after him.

After the sale of the note to the bank, Florida retained

possession of the deed of trust and assumed to exercise acts of ownership over it.    He filed it for record, which he really had no express authority to do, but as that was an act so manifestly to the interest of the holder of the note and the indorsers, it is to be considered authoritative because it was in the line of his duty as custodian.    But afterwards when he instigated Penny and Boucher to execute the deed of release that act was in violation of his duty and a fraud on the bank and on the plaintiffs, and if there were no other controlling facts in the case the plaintiffs would be entitled to the relief prayed.    But there are other facts in the case which detract from the strength of the plaintiff's cause in a court of equity.

It must be remembered that the plaintiffs are here seeking to establish their claim against the claims of innocent purchasers who have invested their money on the faith of a clear record as to the title to this real estate.    This is a case where one of two innocent persons must suffer for the wrongdoing of a third person.    The plaintiffs have no superior equity to that of the defendants upon whose shoulders they seek to lay this burden; that is, there is nothing in their case more than in that of the defendants that appeals especially to a court of conscience.    Now what were the subsequent facts? While the bank held the note, Florida, who had then become the owner of the land subject to the encumbrances, conveyed it by absolute deed to Dickson, who was the bank's attorney, in trust for the bank; and Dickson at the direction of the bank sold the land to Curtis without reservation, and that title Somerville now holds.    Could the bank have enforced that deed of trust against the title that it conveyed to Curtis by the hand of its trustee Dickson?    In that deed which the bank caused Dickson to make for a large consideration which the bank received it declared that the grantee should hold the land to himself "and his heirs and assigns forever, so that neither the said parties of the first part, nor their heirs, nor any other person or persons for them or in their names or behalf, shall or

will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but they and every of them shall by these presents be excluded and forever barred." Certainly the bank cut itself off by that deed from ever asserting any claim against the title it conveyed. Then if the bank could not assert the claim under the deed of trust could the plaintiffs by subrogation to the bank's rights do so? The surety who pays the debt to the principal creditor is entitled by subrogation to whatever security the creditor had and nothing more.

But if plaintiffs prefer not to call their claim a right of subrogation, but that of indorsers who have paid the note and in their own right own the security, the result must be the same.

We quote with approval the following propositions of law from the brief of the learned counsel for the plaintiffs:

"The general principle is that any one standing in the relation of a surety (or indorser) after paying the obligation, is entitled to the benefit of all securities attending it. [Benne v. Schnecko, 100 Mo. 250; Campbell v. Pope, 96 Mo. 468; Berthold v. Berthold, 46 Mo. 557; Furnold v. Bank, 44 Mo. 336.] The proofs show that the plaintiffs indorsed this paper upon the strength of this deed of trust. But this was not essential. They would have had the same right to avail themselves of it, if they had discovered its existence long after making the indorsement. [Salmon Falls Bank v. Leyser, 116 Mo. 78; Major v. Hill, 13 Mo. 247; Furnold v. Bank, 44 Mo. 339; Lake v. Brutton, 8 De G. M. & G. 440.] It is immaterial that the deed of trust was not placed in the hands of the bank. The rights of the indorsers are the same. [Jones on Pledges, sec. 513]."

And it is also the law that if the holder of a note amply secured by a deed of trust releases that security without the consent of the indorser, he thereby discharges the indorser from his liability. [Ferguson v. Turner, 7 Mo. 497; Rice v.

George v. Somerville.

Morton, 19 Mo. 280; Priest v. Watson, 75 Mo. 310; Lower v. Bank, 78 Mo. 67.]    Therefore when the bank executed its Dickson deed whereby it conveyed the land to the grantee without reservation and with express surrender of· all rights and claim, it absolved the plaintiffs from all obligation to it on account of the note, and when they afterwards paid it they did what they were not bound to do and in that sense were mere volunteers. It may be that the bank would not have executed the Dickson deed if it had known of the deed of trust, but that makes no difference, the bank must take the consequences of its own act.    We have seen that the bank could have availed itself of the security afforded by the deed although it did not give the credit on account of it, and was ignorant of its existence when it negotiated the note, so in like manner it could release it though ignorant of its existence. Suppose the bank had sued the plaintiffs as indorsers on the note, and they had pleaded that the bank by the Dickson deed had released the security which was ample to pay the debt and the bank had replied that at the time it executed the Dickson deed it was ignorant that the deed of trust existed, would that reply have avoided the defense pleaded?

And it may be also that the plaintiffs if they had known that the bank had released the security afforded by the deed of trust would not have paid the note, but that was their lookout, they have no right to impose the consequence of their mistake on these defendants.

Therefore although the Penny-Boucher deed of release was a fraud, yet the plaintiffs are not hurt by it, because, if it had never been executed or put on record, the deed of trust it purports to release would be of no avail to the plaintiffs in the face of the Dickson deed; and the owner of the note having released the security, the plaintiffs were discharged from their liability as indorsers, and if after that they chose voluntarily to pay the note, or paid it supposing they were bound to do so

without informing themselves as to the facts, they can not lay the consequence of their voluntary act or misapprehension on others who are equally as innocent as themselves.

There are other points presented in the briefs of the learned counsel for appellants but it is unnecessary to consider them because what is above said disposes of the case.

The judgment of the circuit court is reversed.

*Brace, P. J.,* and *Robinson, J.,* concur; *Marshall, J.,* concurs in result.