E. C. VANDAGRIFT, Receiver of the Bates Na-
tional Bank of Butler, Missouri, Appellant, v.
BATES COUNTY INVESTMENT COMPANY,
DeWITT C. CHASTAIN, Assignee, Respondent.

Kansas City Court of Appeals, May 23, 1910.

1. **BILLS AND NOTES: Paid Notes: Sale: Fraud: Notice.** The
Bates County Bank and its successor, the Bates National Bank,
were, until January, 1906, closely allied with the Bates County
Investment Company, the institutions being officered by the
same persons and doing business in the same place, using the
same safety vaults, the same letter books, and the bank keeping
a detailed account of the Investment Company's business. March
1, 1900, one Holt made a second deed of trust to the Investment
Company to secure two notes of $500 each, for money loaned to
Holt by the Bank, on certain real estate owned by Holt, the
Bank receiving the notes. November 6, 1900, the bank sold the
notes to the Investment Company. In 1904, Holt agreed with
the president of the Investment Company to deed to it his in-
terest in the land, and the president agreed to cancel Holt's ob-
ligation on his notes. Holt was then credited on the Invest-
ment Company's books with $1000. Holt did not make the
deed, but February 18, 1905, the Investment Company foreclosed
his deed of trust and took a trustee's deed to the property for
the nominal consideration of $100, but did not record such deed
until April 14, 1906. In November, 1905, after maturity, the
Investment Company sold the notes to the bank. In April, 1906,
the Investment Company sold the land for $3600, paid off the
first deed of trust, leaving a balance in its hands of $1891.28.
Both institutions failed. Plaintiff seeks to follow a trust fund
by tracing the fund into the assets held by defendant, and to
secure a preference for the full amount of plaintiff's claim. The
order of the trial court refusing this relief is affirmed.

2. ———: ———: ———. A resale by the Investment Company to the bank of the two notes in question after the foreclosure of the deed of trust securing them, would be a fraud on the bank, unless it had notice or knowledge of the facts.

3. ———: ———: ———. So far as the maker of the notes is concerned the bank was not an innocent purchaser, as it did not become the owner until after maturity.

4. ———: ———: ———: **Status of Purchaser of Matured Note.** The sale and transfer of the notes by the Investment Company to the bank, after their maturity, was equivalent to the execution of a bill at sight.

5. ———: ———: ———: **Transfer of Note: Assignment of Security: Transfer of Paid Note.** As a rule, the transfer of a note operates as an assignment of the security. But when a note has been paid by the maker at or after maturity it is defunct.

6. ———: ———: **Notice to Officer: Notice to Corporation, When: Plaintiff has not Right to Priority.** Ordinarily the information received by an officer of a corporation in his individual capacity is not to be attributed to the corporation. But in a case like this where all the officers of the bank have complete information as to the facts, the bank must have been acquainted with all the facts pertaining to the transaction. Practically the Investment Company was the agent of the bank in the matter, and the act of the one ought to be treated as the act of the other. The plaintiff is not entitled to any preference over the other creditors of the Investment Company.

Appeal from Vernon Circuit Court,—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*John A. Eaton* and *E. H. McVey* for appellant.

(1)   Bills and notes remain negotiable after payment, so far as respects the parties who shall knowingly negotiate the same afterward, for in such case the negotiation cannot prejudice any other persons and will only charge themselves. Mabry v. Matheny, 10 Smedes and Marshall, 323, 48 Am. Dec., 753; Daniels on Neg. Inst. (4 Ed.), 1242; Wade v. Small, 2 Greenleaf, 207;

11 Am. Dec. 62, and note 66; 4 Ency. of Law, note 7, page 499; Eaton v. McKown, 34 Me. 510; 6 Ency. of Law and Proc., 791. (2) The two notes recited by their terms that they were secured by a deed of trust on 240 acres of land. The sale of the notes to the bank operated as an assignment of the security. The transfer of a note secured by a deed of trust or mortgage operates as an assignment of the mortgage or deed of trust given to secure same. Bell v. Simpson, 75 Mo. 485; Pollihan v. Revely, 116 Mo. App. 719; Lee v. Clark, 89 Mo. 553; Savings Bank v. Green, 84 Mo. 477; Logan v. Smith, 62 Mo. 455; Chappell v. Allen, 38 Mo. 213; 4 Cyc. of Law and Proc., p. 73; 27 Cyc. of Law and Proc., p. 1287. (3) Where a trustee mixes trust money with his own, so that it cannot be distinguished what particular part is trust money and what part is private money, equity will follow the money by taking out what is due the *cestui que trust,* where it is made to appear that the assets of the trustee, which have been brought under the jurisdiction of the assignee, have been swelled by having the trust fund mixed with them. 3 Pomeroy's Eq. Jur., sec. 1047; Meystedt v. Grace, 86 Mo. App. 178; Synod of North America v. Shoenrich, 143 Mo., 663; Tiernan's Executors v. B. & L. Assn., 152 Mo. l. c. 142; Paul v. Draper, 158 Mo. 200; Deming Co. v. Webb, 76 Mo. App. 338; Harrison v. Smith, 83 Mo. 210; Green v. Conrad, 114 Mo. 631; Patterson v. Booth, 103 Mo. 402; Brewing Co. v. Dodd, 45 Mo. App. 603; Schwartz Bros. v. Zumbaulen, 85 Mo. App. 671; Leahey v. Witte, 123 Mo. 207; Banking Co. v. Donovan, 195 Mo. 262. (4) When the Investment Company in April, 1906, received the $3600 from R. Anderson and converted this money to its own use and failed to make accounting to the bank, the officers of the Investment Company were not the officers of the Bates National Bank, and there is no knowledge shown upon the part of the bank of any facts concerning the actual transaction or facts sufficient to put the bank upon inquiry.

Bank v. Lovitt, 114 Mo. 519; Benton v. Bank, 122 Mo. 332.

*John S. Francisco* and *D. C. Chastain* for respondent.

(1)   Plaintiff seeks to charge defendant on the theory that assuming that the notes were not paid as to Holts by the indorsement respondent became liable. The endorsement being after maturity plaintiff was charged with notice of the fact that the land had been sold and took it subject to these equities.   Chappell v. Allen, 38 Mo. 213; Kellogg v. Senake, 56 Mo. 136. (2)   Further, the endorsement being restricted, that is, without recourse, the only warranties were the implied warranties of title, which cannot be held to be a warranty of the truth of the statement that the notes were secured.   7 Cyc., 830; 4 Am. and Eng. Ency., 478.   (3) While it is true as a general rule that a transfer of a debt secured by a mortgage carries the mortgage, yet the mortgage does not follow the debt unless this is the intention of the parties.   And in this case the mortgage being extinguished it could not have been the intention of the defendant to transfer the mortgage.   Lee v. Turner, 89 Mo. 489; Polliham v. Revely, 116 Mo. App. 711.

BROADDUS, P. J.—This is an action the purpose of which is to follow a certain fund by tracing it into the assets held by the respondent assignee, and to secure a preference for the full payment of the plaintiff's claim.

The plaintiff is the receiver of the Bates National Bank, of Butler, Missouri, organized in September, 1902, and which continued in business until September 20, 1906, at which date it was declared insolvent and a receiver was appointed, who held the office until May 15, 1908, when the plaintiff was appointed as his successor.

The Bates County Investment Company was organized as a Missouri corporation in June, 1897, and continued in business until February, 1907, at which time it made an assignment for the benefit of creditors and defendant Chastain was appointed assignee. During the years of 1905 and of 1906 this company was insolvent.

In January, 1900, one Mary E. Holt acquired title by deed to two hundred and forty acres of land in Bates county. It appears, however, that she took the title in her own name for the benefit of the real purchaser, her son, E. A. Holt. On March 1st, 1900, Mary E. Holt and her husband executed to a trustee for the investment company two deeds of trust, one for $1500, securing three notes for $500 each; and the other or second deed of trust for $1000, securing two notes for $500 each; both of which were duly recorded March 17, 1900. All these notes were signed by E. A. Holt, and recited on their faces that they were secured by the said deeds of trust. The consideration for the two deeds of trust and the notes mentioned was furnished by the Bates County Bank, of which the Bates National Bank was the successor. The transaction was according to the usual custom existing between the bank and the Investment Company when a real estate loan was made by the bank. In a short time thereafter, the three notes described in the first deed of trust were sold in the regular course of business to the Masonic Home of Missouri, which held them until paid in April, 1906.

The controversy arises as to the two notes secured by the second deed of trust, which are designated by numbers 193 and 194.

The Investment Company kept deposits and a checking account in the bank and the two institutions were until January, 1906, closely related. The officers and most of the directors were the same and the place of business was the same.

The books of the bank show, that on November 6, 1900, the bank sold the two notes to the Investment Company, and the books of the latter evidence such sale. These notes matured March 1, 1905, five years from date. On February 18, 1905, the land, which was security for the notes, was sold by the trustee, and the Investment Company at such sale became the purchaser and received a deed from the trustee therefor, but did not place it on record until April 14, 1906, more than a year later.

It is claimed that this sale was made in pursuance of an agreement between E. A. Holt, the beneficial owner of the land, and F. J. Tygard, the president of the Investment Company. The evidence in support of this claim is that of A. E. Holt and is as follows: "In 1904, I paid part of the interest, but the crops were destroyed, and I had bad luck and I could not do anything more, and in 1904, Captain Tygard came to me on the east side of the square and told me that he guessed they had better take the land back. I said all right, I had done all that I could do, and for them to take the land back, and told them that I would give them the deed for the land, that it would not be necessary to sell it. I told Captain that he had better take it back and cancel all that I owed there, as the property was well worth the whole amount, and Captain told me he would take it back for the mortgage, whatever the mortgage called for, twenty-five hundred dollars, that he would take it back for that amount. He advertised the land, so I learned a short time afterwards. Having an appointment with the Government, I went on duty and I was not here when the land was sold. I supposed that the notes were all cancelled, as was the agreement." The consideration mentioned in the deed of trust was $100.

In November, 1905, the two notes were sold by the Investment Company to the Bank. Subsequently, on April 13, 1906, the company sold to one R. Anderson

the two hundred and forty acres of land for $3600, in cash. As stated the three notes were paid April 30, 1906, the accrued interest at that time $208.72, making a total then due and paid $1708.72. This left in the hands of the Investment Company a balance realized on sale of the land of $1891.28.

About the time the arrangement was made between Tygard and Holt, that the Investment Company take the land and cancel the latter's notes as testified to by the latter, he was given credit for the amount of the notes in the sum of $1000, the amount received by the former from the bank.

Plaintiff introduced evidence for the purpose of showing that there had come into the hands of the defendant as assignee of the Investment Company collateral paper, obtained by use of the remainder of the fund derived from the sale of land after payment of the three first mortgage notes held by the Masonic Home.

The relationship between the two concerns was of the most intimate nature. Besides, the officers of the two being the same and their place of business being the same, they used the same safety vaults, the same letter books, and the bank kept detailed account of the Investment Company's business.

A resale by the Investment Company to the bank of the two notes after a foreclosure of the deed of trust, was a fraud upon the latter unless it had notice or knowledge of that fact. So far as the maker of the notes is concerned as a matter of law the bank was not an innocent purchaser as it did not become the owner until after maturity. But the sale and transfer by the Investment Company to the bank after maturity of the notes was equivalent to the execution of a bill at sight. [Kelley v. Staed, 136 Mo. 430; Light v. Kingsbury, 50 Mo. 331; Davis v. Francisco, 11 Mo. 1. c. 575.] And such transfer as a rule operates as an assignment of the security. [Barber v. Stroub, 111 Mo. App. 57:

Hagerman v. Sutton, 91 Mo. 519.] But while such is the rule the law is also, where the note has been paid by the maker at or after maturity, it becomes extinguished. [Kelley v. Staed, supra; Daniels on Negotiable Instruments, vol. II, sec. 1238.] It followed, as a matter of course when the bank took the notes after maturity and when paid, they were defunct.

Notwithstanding it may be conceded that the sale of the notes under the circumstances to the bank by the Investment Company was a fraud upon the former, the defendant assignee contends that the bank had notice of the fraud. That the officers of both corporations being the same the knowledge of each as individuals was the same. It is, however, a rule of law that the knowledge an officer of a corporation receives in his individual capacity is not to be attributed to the corporation. Such knowledge being in the breast of the officer and not imparted to the corporation or to the mangement of the corporation, were it not for the rule excluding evidence of such knowledge, might lead to great injustice and open the door to almost every species of fraud. But as here, where all the officers of a corporation have the same knowledge as to the existence of a certain fact, the reason for the rule no longer exists, because the information as to the fact is as complete as it can be imparted.

However, we believe that under the circumstances, owing to the confidential relations existing between the two corporations the bank must have been acquainted with all the facts pertaining to the transaction. Practically the company was the agent of the bank in the transaction and the act of the one ought to be treated as the act of the other. For this reason we do not feel that we would be justified in holding that the plaintiff as receiver is entitled to any preference over the other creditors to any of the assets in the hands of the assignee. We do not know upon what theory the trial

court disposed of the case, but we are satisfied that its conclusion was right. Judgment affirmed. All concur.