KIRK BAXTER *et al.*, Respondents, v. F. M. DONNELL *et al.*, Appellants.

St. Louis Court of Appeals, March 9, 1897.

1. **Practice, Appellate:** EVIDENCE: EXCEPTIONS: EQUITY. In equity cases the evidence is reviewable by the appellate court as upon a first impression. But where the evidence is oral and conflicting, and the finding appears to be correct, the court will pay some regard to the conclusion reached by the chancellor; and where all the evidence is contained in the record, will not pass upon exceptions to its admission or rejection.

2. **Evidence, Sufficiency of.** The evidence in this cause is considered, and held sufficient to support the finding.

*Appeal from the Greene Circuit Court.*—HON. J. T. NEVILLE, Judge.

AFFIRMED.

*Massey & Tatlow* for appellants.

Equity cases in this state are to be heard and determined in the appellate court as for the first time. *Lins v. Lenhart,* 127 Mo. 271, at 281.

When the courts say the appellate court will defer somewhat to the finding of the chancellor, they are not to be understood as meaning that that court will be concluded by the finding of facts by the trial court, but only as meaning when there is a conflict of evidence, or where the testimony is evenly balanced, and the finding below appears to be correct, then that court will so far defer as to sanction it by affirmance. *Benne v. Schnecko,* 100 Mo. 250, at 256; *McElroy v. Maxwell,* 101 *Id.* 294, at 308; *Bell v. Campbell;* 123 *Id.* 1, at 20; *Gottschalk v. Kirchner,* 109 *Id.* 170, at 182.

If Robinson, the payee in the note, had assigned the same, and was not the owner thereof at the time he signed the release, then the same is not a release, but is void. *Lee v. Clark,* 89 Mo. 551; *Bank v. Frame,* 112 *Id.* 503; *Lord v. Schamloeffel.*

*White & McCammon* for respondents.

In equity cases where the testimony is oral and conflicting, the appellate courts, while they retain supervisory control over the trial courts, will defer to the findings of facts by the chancellor. *Anderson v. Griffith,* 86 Mo. 550; *Lins v. Lenhart,* 127 *Id.* 281. See, also, *Toler v. McCabe,* 52 Mo. App. 534; *Erskine v. Lowenstein,* 82 Mo. 301, 309; *Taylor v. Cayce,* 97 *Id.* 242, 249; *Roberts v. Hereford,* 54 Mo. App. 371;

*Mathias v. O'Neil,* 94 Mo. 529; *Rawlins v. Rawlins,* 102 *Id.* 567; *Jamison v. Bagot,* 106 *Id.* 267.

BOND, J.—Plaintiffs prayed for an injunction against a sale of certain real estate under a deed of trust made by J. J. Marks, to secure a note for $750, bearing ten per cent interest, dated May 14, 1885, and payable to George Robinson, March 1, 1886, and for a cancellation of said note. The petition alleged that said note was, at its maturity, paid to said Robinson, the then holder and owner, who thereupon satisfied said deed of trust. The answer admitted the fact of the release of the deed of trust on March 11, 1886, by the payee of said note, but denied his authority in the premises, and averred that prior to its maturity he had indorsed the note in blank and delivered it to one Milner, from whom defendant purchased it for value and in good faith before its maturity. Upon the trial the court decreed the relief prayed in the petition, from which defendant appealed.

The law applicable to the questions raised in this case is clear. If the note in controversy was transferred for value and in good faith prior to PRACTICE, appellate: evidence: exceptions: equity. its maturity, the transferrer could not thereafter release the security afforded by the deed of trust. *Lee v. Clark,* 89 Mo. 553; *Bank v. Frame,* 112 Mo. 503. This being a suit in equity, the evidence is reviewable by us as upon a first impression. But the testimony being oral, if it is evenly balanced or conflicting, and the finding appears to be correct, some regard will be paid to the conclusion reached by the trier of the facts. *Lins v. Lenhart,* 127 Mo. 281; *Benne v. Schnecko,* 100 Mo. *loc. cit.* 258; *Finley v. Schlueter,* 54 Mo. App. *loc. cit.* 458. In proceedings in equity we do not pass upon exceptions as to admission or rejection of evidence, when all the

evidence is contained in the record, for we can con-
sider what is competent, and exclude that which is
incompetent, in our own finding. *Padley v. Neil et al.*,
35 S. W. Rep. 997. The only question of fact pre-
sented by this record is as to the time when the note,
with the blank indorsement of the payee, passed into
the possession of Milner, from which defendant claims
to have purchased it. It is incumbent on plaintiffs to
show that this had not happened on the eleventh of
March, 1886, when the undisputed evidence shows the
maker of the note paid and discharged it in full to the
payee, who thereupon entered satisfaction of record of
the mortgage given to secure said note. Plaintiffs
testimony on this point consists of the positive state-
ments of the payee that he held and owned the note
on March 11, 1886, and statements of both payee and
payor that neither of them at any time had any deal-
ings with Milner touching the note, and that he was
never the agent of either of them; and the further
statement of Milner that he did not know how or from
whom he got the note; that he never at any time
received from the payor or payee any money to pay
the interest, but that he personally paid the interest on
$500 of said note to the brother and agent of defend-
ant, until 1895, and that he told another brother who
succeeded the former as agent of defendant that "it
was his (Milner's) matter."

Defendant gave evidence that her brother, Aleck
Anderson, was her agent to invest her money at
Springfield, Missouri; that on February 2, 1886, he
wrote her, to wit:

"SPRINGFIELD, Mo., Feb. 2, 1886.

"DEAR ELLEN:

"Enclosed find draft for $62.50. J. L. Carson.
There is more due and some will be paid soon. Frank
Morgan and Dr. Marks. You ask me what I mean by

Dr. Marks' $650? By referring to your account you will find that Norfleet's amount was $500. When he paid up I loaned it to the old minister, Dr. Marks. He wanted $650. Milner furnished $150. I made the note to you so when he pays it he will get his interest and you the $500. If any is paid in I will pay Milner $150 so you can have the whole note. You know I have $150 of yours unaccounted for, but I have it safe and it is drawing interest. * * * ALECK.''

On July 1, 1886, he wrote her, to wit:

''DEAR ELLA:—Enclosed find draft for $50, the first have been able to collect for some time so send it at once. Have not heard anything from home for some time. Wrote Lelia from Eureka. This is from J. J. Marks. You know you and Milner have a note of $650--you $500. Acknowledge at once.

''Hastily,                     ALECK.''

Defendant also introduced in evidence memorandum books kept by herself and brother showing the receipt of interest on $500 of a $600 note for several years. Her brother Aleck also testified that he purchased the note in suit by paying Milner therefor $500 before its maturity in 1885. An analysis of this testimony satisfies us that the finding of the trial court is sustained by the weight of the evidence. The defendants' only connection with the note in controversy was through Milner, who does not claim that it was acquired by him, by purchase or upon a loan, either from the payor or payee. He admits that he was never the agent of the maker or payee of the note. His only explanation of his possession of it is, that it was found among the papers of the abstracting firm of Milner & Lisenby, of which he was a member. He expressly states that he never at any time asked either of the parties to the note to pay any interest on it, but that he personally paid the interest for the nine years which had elapsed

when suit was brought. He also states that he informed the second brother of defendant that the note was his (Milner's) personal matter.

It is evident that the testimony of Milner in no way contradicts the testimony adduced by plaintiffs to the effect that the note was in the hands of the payee when it was paid after its maturity on the eleventh day of March, 1886. Neither do we think plaintiffs' proof on this point is successfully impeached by the testimony of defendants' brothers. One of them reported that he had loaned $500 "to the old minister, Dr. Marks." That this statement was not true, appears both from the answer and the testimony of the witness that he got the note by paying therefor $500 to Milner. Again, the letters, *supra*, do not describe the note in suit, although the writer claimed to have had it before him when they were written. Neither do the memorandum books correctly describe the note. These inaccuracies do not strengthen the testimony of the agent, if the note was in his possession when these writings were made. It should have been identified by a correct description.

There was evidence tending to show that Milner was largely indebted to the defendant. The most satisfactory view of this case to our minds is that in some way as title examiners the note in question, after its payment and the release of the deed of trust, fell into the hands of the firm of Milner & Lisenby and that in the subsequent transactions between Milner and defendant the note was delivered to her agent to secure a part of Milner's indebtedness. We can not conceive if the facts were otherwise how Milner could have *personally* paid the interest on a portion of this note for nine years without

EVIDENCE, sufficiency of.

at any time requiring reimbursement from the parties primarily liable. Our conclusioh is this decree is for the right party and will be affirmed.

All concur.