## C. S. CASNER, Respondent, v. I. SCHWARTZ, Appellant, S. J. HEATON, ET AL., Defendants.

### Kansas City Court of Appeals, January 28, 1918.

1. **BILLS AND NOTES:** Triplicate: Deed of Trust: Negotiations: New Issue: Rival Claimants. C fraudulently procured a note to be executed to himself in triplicate with a deed of trust securing one note, not designating which one. He then negotiated one of the notes to a bank for a loan, then paid the loan and took up the note. Then he several different times re-negotiated the note as collateral for loans, taking it up each time, until finally he negotiated it to H, a present claimant. The day C sold and negotiated to S, the other note was in the hands of one of his various endorsees, but on the next day he took it up and held it for a time, and then continued to re-negotiate it and take it up until it reached H, the present claimant. It was *held*, that when C took up the note and re-negotiated it to H, it was a new issue by him and being subsequent to the purchase of the other note by S, it left the latter entitled to priority of the lien of the deed of trust.

2. ————: Triplicate: Fraud: First Negotiation: Priority. When a note is fraudulently executed in triplicate with a deed of trust securing payment of the note, the one first negotiated will be considered the real note, entitled to priority in the lien of the deed of trust.

3. ————: ————: Negotiation: Reissue. When the payee in a note negotiates it to an innocent purchaser and in the course of busi-

ness again becomes the holder and again negotiates it, it is a reissue or new issue of the note.

4. ———: **Knowledge: Equities: Original Payee.** While one with knowledge of the infirmity of a note who purchases it from an innocent holder will get a good title free of equities in favor of the maker, yet this rule does not reach so far as to include the payee, who may, in the course of business, again become the owner of the note, as to him the note is subject to any defense as if it had never been negotiated by him.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

REVERSED AND REMANDED  (*with directions*).

*Calvin & Rea* for appellant.

*Samuel Feller* for respondent, Casner, and *John D. Meyers* for the defendant, Heaton.

ELLISON, P. J.—Plaintiff's petition is in equity whereby he seeks to have ascertained and declared which of three holders of three separate sets of promissory notes of three each, each set purporting to be secured by the same deed of trust, is entitled to priority; that is to say, which set should be considered as secured by deed of trust to the exclusion of the others.

Plaintiff has become the owner of the real estate described in the deed of trust and alleges in her petition that she paid one thousand dollars on the principal of the note for five thousand dollars, now held by Heaton and interest on two notes of five hundred dollars each. She alleges in her petition that she does not know which of the three sets of notes are the 'ones really secured by the deed of trust, but that if the Court finds that the notes held by Schwartz are the true notes that then the payment made and credited on the Heaton notes, as aforesaid, be credited on the Schwartz notes, and that any effort made to sell the land under the deed of trust be enjoined until such credit is made.

The trial court found in favor of the set held by defendant Heaton, whereupon defendants Schwartz and The Scarritt Bible and Training School appealed. The latter afterwards abandoned its appeal and we have to decide between Heaton and Schwartz.

These notes were thus executed in triplicate by C. M. Young and his wife. One was for $5000, due in three years, one was for $500, due in four years, and one was for $500, due in five years, each payable to J. S. Chick Investment Company or order, each dated September 1, 1911, and each bearing six per cent interest.

It appears that the Chick Company held the set of notes now owned by defendant Heaton for nearly two months, when on October 21, 1911, it (through Chick) negotiated them to the Southwest National Bank of Commerce as collateral for a loan, by the following endorsement: "For value received J. S. Chick Investment Co., hereby assigns and transfers this note to ———— or order, without recourse, together with all its interest in and rights under the deed of trust securing same. J. S. Chick Investment Co., J. S. Chick, Jr., President." On October 30, 1911, Chick took them up from the bank and on November 2, 1911, he negotiated them to plaintiff Casner as collateral by same endorsement and again, on January 19, 1912, took them up; and on the same day again negotiated them to the Southwest National Bank of Commerce as collateral for another loan, and again, on March 19, 1912, he took them up, and on the same day negotiated them by same endorsement to Jobes. Then, after nearly three years, on January 28, 1915, he took them up from Jobes and on same day sold and negotiated them by same endorsement, to defendant Heaton, who now holds them.

Chick on January 18, 1912, sold and negotiated by same character of endorsement another set of the triplicate issue to Schwartz and he has held them since.

It will be noted that the notes now claimed by defendant Heaton were the first to be negotiated by Chick. They were negotiated to the bank in October, 1911, while those held by defendant Schwartz were

not negotiated until January, 1912, that being their first transfer from Chick. So that under the rule when there is more than one issue of notes the first one is to be considered the real one secured by the deed of trust, it is clear that Heaton would have the prior right. That rule is recognized in Southern Com. Bank v. Slattery, 166 Mo. 620. It was expressly decided by this court in Quinn v. McCallum, 178 Mo. App. 241, and again in Yeomans v. Nachman, 198 S. W. 180.

But it will be noted that the notes finally getting to and now held by Heaton were, after their first endorsement, several times taken up by Chick and again endorsed by him to other parties. The last time they were in Chick's hands and re-negotiated by him was January 28, 1915, when he took them up from Jobes and then sold them to defendant Heaton. This was more than three years after Schwartz bought his set, which, as we have said, he still holds.

But when Chick took up the notes from his various endorsees and re-negotiated them, they, each time, became a reissue by Chick, so that when he took up the notes and again negotiated them to Jobes and then to defendant Heaton, it was a new issue (Kelly v. Staed, 136 Mo. 430; Sater v. Hunt, 66 Mo. App. 527; Hawkins v. Weist, 167 Mo. App. 439; Devens v. Van Valkenburgh, 192 Mo. App. 215), and being subsequent to the issue to Schwartz, it left the latter, in point of time, with a superior claim to the lien of the deed of trust. Being a new issue, the line of negotiation, in regular course with consequent rights of innocent endorsees, was broken and they were freed from any past negotiation and stood in Chick's hands as though never negotiated by him.

This view is supported by another rule of law, viz, that though one with knowledge of the infirmity of a note may purchase it from any innocent holder and get good title, freed from defense by the maker, "this rule does not reach so far as to include the original payee who may, in the course of business, again become the owner of the note; since he is the original wrongdoer in negotiating the note and would be liable

over to the maker for what the latter would be compelled to pay." [Miller v. Chinn, 195 S. W. 552; Argon Coffee Co. v. Rogers, 105 Va. 51, 54; Borquin v. Borquin, 120 Ga. 115, 119; Kost v. Bender, 25 Mich. 515; Hoye v. Kalashain, 22 R. L. 101; Comstock v. Buckley, 141 Wisc. 228, 233; Andrews v. Robertson, 111 Wisc. 334, 337, 338.] In the first of the three last cases it is said, the note "is subject to any defense that could have been made had it never been transferred at all." In the second, "When it (the note) came back to his (the payee's) hands it reassumed the same position it formerly occupied; * * * ". In the third, it is said that the payee's, "position is the same when he comes into possession of the paper the second time as when he first posessed it."

So we are of the opinion that Chick having sold the notes to Swartz on January 18, 1912, and on the next day (January 19th) having taken up the Heaton notes, the latter notes became as though never issued and his act resulted in protecting the Schwartz notes and giving them first place in the lien of the deed of trust—a place they could not lose by any subsequent act of Chick.

The foregoing views lead to a reversal of the judgment and remanding of the cause with directions to enter a decree for Schwartz. All concur.