## JOHANNA FOEGE, Respondent, v. HERMAN WOE-STENDIEK, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 9, 1919.
Opinion Filed May 6, 1919.

1. APPELLATE PRACTICE: Pleading: Theory of Case Not Advanced in Trial Court: Not Reviewable. A theory not in the pleadings or advanced at the trial cannot be considered by the appellate court.

2. ————: Evidence Offered Subject to Objection: No Ruling: Deposition in Abstract: Equity Case: Rule of Review. The general rule that testimony should not be taken subject to objection and no ruling afterwards made thereon does not apply in an equity case, where the whole deposition is incorporated in the abstract and is before the appellate court, so that, irrespective of the action of the trial court upon it, that is as to whether he accepted it and finally held it admissible, or excluded it, it is in the record subject to examination by the appellate court.

3. WITNESSES. Conviction of Felony: Competency. That a witness has been convicted of a felony, goes under the provision of section 6383, Revised Statutes of 1909, not to his competency as a witness but as to the credibility of his testimony.

4. APPELLATE PRACTICE: Equity: Theory of Case Not Advanced in Trial Court: Not Reviewable. In an action by the first purchaser of notes secured by deed of trust, through an agent who fraudulently failed to record the deed of trust, and afterwards procured a second loan on the same deed of trust, against the holder of the deed of trust which was transferred to the second lender by the agent, etc., the matter that the trial court having jurisdiction over the parties should have made an order or decree touching the difference between plaintiff's notes and the funds

held by defendant, not having been brought before the trial court, is not reviewable by the appellate court.

5. **BROKERS: Real Estate Agents: Fraud of Agent: Corporation Maker of Notes and Agent One and the Same: Evidence.** Evidence reviewed and *held* that the facts in evidence warranted the finding that the real estate agent who induced plaintiff to purchase notes secured by deed of trust and the corporation maker of the notes and deed of trust were one and the same.

6. **MORTGAGES AND DEEDS OF TRUST: Deed of Trust Incident to Note: Fraudulent Notes: Owner of First Note Negotiated Takes Priority: Notice.** One purchasing a note secured by a mortgage or deed of trust takes the latter as an incident to the note; and where the note is transferred before becoming due, the purchaser takes it with all the presumptions in his favor of want of notice on his part of any secret claims or trusts attached to the notes in favor of third persons, and the mortgage or deed of trust passes on the same footing as the note; that where one purchases a note in good faith, and before due, he cannot be affected by any subsequent notice of claims of third persons on the note, and when a series of notes are fraudulently executed with a deed of trust securing payment of the note, the one first negotiated will be considered the real note, entitled to priority in the lien of the deed of trust.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Kent K. Koerner*, Judge.

AFFIRMED.

*Eugene D. Ruth, Jr.*, and *James T. Roberts* for appellant.

(1) The notes and deed of trust in controversy were executed by the Jessie Morris Realty & Investment Company for the specific purpose of erecting a dwelling on the lot on Eads Avenue. Dearth, the payee, was a straw man. He endorsed the notes and delivered them to Frederick, the president of the company. Frederick sold the notes and deed of trust to respondents to pay his (Frederick's) debt to respondent. Respondent took the notes and deed of trust, with a full knowledge of all of the facts in the case. On her own showing respondent acquired her securities as the result of a

fraudulent transaction. Davis v. Gimmel, 70 Md. 259; 10 Cyc, 799 and cases cited; Greenville Gas Co. v. Reis, 54 Ohio, 549; National Tube Company v. Ring, etc., 118 Mo. 365; St. Louis Charcoal Company v. Lewis, 154 Mo. App. 548; Blake v. Bank, 219 Mo. 644; McCullum v. Buckingham Hotel Co., 199 S. W. 417; Coleman v. Stocke, 159 Mo. App. 43; Reynolds v. Union Sta. Bank, 200 S. W. 715; Reynolds v. Gerdelman, 185 Mo. App. 176; St. Charles Bank v. Edwards, 243 Mo. 553; Reynolds v. Title Guaranty Co., 189 S. W. 33; Reynolds v. Whittemore, 190 S. W. 594; Gildersleeve v. Lester, 68 Hun. 532. (2) Plaintiff does not come into court with clean hands. Having been a party to a fraudulent transaction, equity will not aid her, as she requires the aid of her fraudulent transaction to establish her case, but will leave her where she has by her misconduct placed herself. Nester v. Brewing Company, 161 Pa. 461, 24 L. R. A. 247; 10 Ruling Case Law, 391-392; Houtz v. Hellman, 228 Mo. 655; Little v. Cunningham, 116 Mo. App. 545; Louthan v. Stillwell, 73 Mo. 492; Creamer v. Bervert, 214 Mo. 473; Thompson v. Lindsey, 242 Mo. 53; 16 Cyc. p. 148, and cases cited. (3) The answer alleges and the court found that the money advanced by the Edward K. Love Realty Company as a building loan, on the faith of the notes and deed of trust executed by the Jessie Morris Company, was actually expended in erecting the improvements on the land covered by the deed of trust. This being the case, it follows that he expects equity must do equity, and the court should have ordered an accounting and should have allowed defendant Woestendiek the difference between the value of the vacant ground and the value of the improvements. Kline v. Vogel, 90 Mo. 239, 245; Woodward v. Mastin, 106 Mo. 362; Little v. Cunningham, 116 Mo. App. 545. (4) The court took the deposition of A. H. Frederick, offered by plaintiff, subject to objection and never ruled on the objection. The testimony was inadmissible and the action of the court was reversible error. Stone v. Fry, 191 Mo. App. 607, 613; Ashbury v. Hicklin, 181

Mo. 658; Seafield v. Bohne, 169 Mo. 537. (5) The court having jurisdiction over plaintiff, defendant Woestendiek, defendant Jessie Morris Realty & Investment Company and defendant A. H. Murphy, who owns the property, should have made an order or decree touching the $1000, being the difference between plaintiff's notes and the notes held by defendant Woestendiek.

*John C. Robertson* for respondent.

(1) When a deed of trust or mortgage is executed to secure the payment of negotiable promissory note, therein described and a duplicate of such note is executed at the same time, the one of such notes that is negotiated first, to an innocent purchaser, will carry the security with it a purchaser of the other note will have no right to the mortgage. Southern Bank v. Slattery, 166 Mo. 620; Quinn v. McCallum, 178 Mo. App. 241; Ponder v. Colvin, 170 Mo. App. 55; Yeomans v. Nachman, 198 Mo. App. 195, 198 S. W. 180; Casner v. Schwartz, 198 Mo. App. 230; Morris v. Bacon, 129 Mass. 58; French v. Hall, 198 Mass. 147; Hagerman v. Sutton, 91 Mo. 519; Rogers v. Abbott, 206 Mass. 270; Jones on Mortgages, secs. 804, 806. (2) The possession of the recorded deed of trust by the mortgagor is not evidence of ownership of the notes described therein, although he may at the time exhibit similar notes indorsed by the payee without recourse. The possession of the mortgage and notes similar to those described therein does not entitle the holder to the benefit of the security as against the pledgee of like notes previously negotiated for value under representation that they were secured by like mortgage. Southern Bank v. Slattery's Admr., 166 Mo. 620; Hagerman v. Sutton, 91 Mo. 531; Carpenter v. Longan, 83 U. S. 275; Kernohan v. Manss, 29 L. R. A. 317; Barnett v. Kinckley, 124 Ill. 32; Jordan v. Cheney, 74 Me. 359; Jones on Mortgages, sec. 818. (3) The lien of a mortgage extends to all improvements and

repairs subsequently made upon the mortgaged premises, whether made by the mortgagor or the purchaser from him. Jones on Mortgages, sec. 147; Martin v. Beatty, 54 Ill. 100; Elliott v. Barry, 134 Mo. App. 95; Johnson v. Morrow, 60 Mo. 339; Davis v. Mugan, 56 Mo. App. 311. (4) There is never a resulting trust declared against an innocent purchaser for value. Putman v. Richie, 6 Paige, 405; Story's Eq., sec. 435; Loring v. Bacon, 4 Mass. 575; Beach v. Bullock, 19 R. I. 121; Stephenson v. Howes, 220 Mo. 199; Jones on Mortgages, sec. 837; Logan v. Smith, 62 Mo. 455; Spaulding v. Kendrick, 172 Mass. 71; Cornish v. Bryan, 10 N. J. Equity, 146. If trust money is expended not in the purchase of land but in improvements upon it, no trust results to the owner of the money. Perry on Trust, sec. 128, page 197; Bodwell v. Nutter, 63 N. H. 446. (5) The holder of note transferred before due, in good faith is not affected by subsequent notice of claims of third persons, the purchaser takes it with all of the presumptions in his favor of want of notice of secret claims or trusts attached to the note in favor of third persons, and the mortgage passes on the same footing as the note. Hagerman v. Sutton, 91 Mo. 519; Martins v. Beatty, 54 Ill. 100; Insurance Co. v. Huntington, 57 Kas. 744; Rice v. Dewey, 54 Barb. 455; Gibson v. Loan Co., 58 Hun. 443; Wharton v. Moore, 84 N. C. 479; Thompson v. Vinton, 121 Mass. 139; Ekstrom v. Hill, 90 Maine 186; Meagher v. Hayes, 152 Mass. 228. (6) The generally accepted doctrine, is that the assignee for value, before maturity of a negotiable note, and a mortgage securing it is unaffected by any equities, to which it would be subject in the hands of the mortgagee, and of which the assignee had no notice. Nat'l Live Stock Bank v. Bank, 203 U. S. 296; Chicago E. Co. v. Bank, 136 U. S. 268; Raymond v. Glover, 104 Cal. 18; Bon v. Graves, 216 Mass. 440; Sonthall v. Anthony, 125 N. Y. S. 1016; Jones on Mortgages, sec. 837; Hopper v. Williams, 95 Md. 734. (7) An antecedent or pre-existing debt constitutes value, and is deemed such

whether the note is payable on demand or at future time. R. S. 1909, sec. 9996; Fitzgerald v. Fleming, 58 Mo. App. 185; Bank v. Sollars, 190 Mo. App. 284; Johnson v. Grayson, 230 Mo. 380; Langford v. Varner, 65 Mo. App. 370. (8) If appellant is required to surrender his security, he has recourse against Love Realty Co. and the present owner of the property who "assumed and agreed to pay $4500. Revised statute, sec. 10,035; Thompson v. McCollough, 31 Mo. 224; Hawkins v. Wiest, 167 Mo. App. 439; Mechem on Agency, sec. 929: Houston v. Tyler, 140 Mo. 266; Thompson v. Allen Co., 42 Mo. App. 419; Gerardi v. Christie, 148 Mo. App. 92; Jones on Mortgages, (6 Ed.) secs. 864, 865; Heim v. Vogel, 69 Mo. 529; Kellog v. Schnaake, 56 Mo. 136; Drury v. Holden, 121 Ill. 137. (9) The holder of negotiable paper endorsed by the Payee is presumed to be the owner thereof under our statutes. Revised Statutes 1909, secs. 10,001 and 10,009; Morris v. Butler, 138 Mo. App. 378; Carter v. Butler, 264 Mo. 306; Am. Trust Co. v. Range Co., 196 Mo. App. 207; Chandler v. Hedrick, 187 Mo. App. 664; Bank v. Hohn, 146 Mo. App. 699; Holders in Due Course, sec. 10,022 R. S. 1909; Bank v. Wood, 189 Mo. App. 62; Greer v. Orchard, 175 Mo. App. 192.

STATEMENT. On the 18th day of May, 1915, plaintiff filed her petition in which she named as defendants "the unknown holders of deed of trust recorded in book 2585, page 230, Alfred H. Murphy and Jessie Morris Realty & Investment Company, a corporation, and R. A. Bullock, Trustee." Afterwards an amended petition was filed by plaintiff, in which she named appellant, Herman Woestendiek, as defendant, together with Alfred H. Murphy, the Jessie Morris Realty & Investment Company, and R. A. Bullock, Trustee.

The amended petition alleges, in substance, that on December 10, 1912, the Jessie Morris Realty & Investment Company defendant, made and executed a principal note for $4500, due three years after date and six semiannual interest notes for $135 each, and also

then made a deed of trust on property described, to se-
cure the same; that a credit of $1000 was indorsed on
the principal note and $30 on each interest note and on
December 11, 1918, for value received, A. H. Frederick,
who was then the legal owner of said notes, transferred
and assigned them together with the deed of trust, to
the plaintiff for value; that four of the interest notes
have been paid, and the principal note and two of the
interest notes remain unpaid. Further, that defendant
Woestendiek claims and pretends to own the above
described notes and the deed of trust securing the same.
Averring that she is the real owner of the unpaid notes
secured by the deed of trust, plaintiff prays that the
court so decree, and also prays for a decree directing
defendant Woestendiek to deliver said deed of trust to
her, that defendant Murphy, now owner of the property,
bought by him subject to the deed of trust, be ordered
to pay the note to her, and for general relief.

The Jessie Morris Realty & Investment Company
filed its answer, admitting its incorporation and denied
generally the allegations of the petition.

The cause was dismissed as to the "unknown hol-
ders" of the deed of trust attacked.

The answer of defendant Woestendiek, after a
general denial, sets up as new matter that he, Woe-
stendiek, holds the genuine notes and the genuine deed
of trust, which he had bought before maturity from the
Edward K. Love Real Estate Company and for which
he paid $4500. That defendant further sets up that the
money advanced by the Love Company was expended in
the erection of the building. To this a general denial
by way of reply was filed.

Defendant Murphy made no answer and no order
or judgment as to him was entered, he being treated
as an unnecessary party.

Plaintiff testified, in substance, that she had known
Mr. Frederick for a number of years; that he had
made a loan of $3500 for her on certain property on
Newstead Avenue, in the city of St. Louis, which she
called the "Gossel Loan;" that early in December, 1912,

about the 6th or 7th, Frederick called her up and told her that the parties wanted to pay this Gossel loan and asked her to bring down her papers. She took these papers to Mr. Frederick's office and left them and afterwards went down there and Frederick told her that the loan had been paid and he (Frederick) had the proceeds of the loan. Plaintiff further testified that she told Mr. Frederick that she did not want the $3500 to lay idle and would like a new investment as soon as possible; that Frederick told her that he did not have any deeds of trust for $3500 at hand that he could give her, and suggested that she come back in a few days; that she returned to Frederick's office on December 10, 1912, and Mr. Frederick then told her that the Jessie Morris Realty & Investment Company was intending to put up some flats on a lot on Eads Avenue and that he thought it was a good loan for her. She further testified that Frederick told her that while the note was for $4500, he would endorse a credit of $1000 on it so as to reduce it to $3500 the amount she had to loan, and this was accordingly done then and there. She testified that Frederick further stated that the company, meaning the Jessie Morris Realty & Investment Company, would put up the additional $1000, as they were going to build the flats. She further testified that Mr. Fernich, who was the vice-president of the company, and the architect, showed her the blue prints of the proposed improvement and described to her fully what the Jessie Morris Realty & Investment Company intended to do touching this improvement of that property; that the notes were brought out and Mr. Frederick thereupon indorsed the credit of $1000 on the principal note, reducing it to $3500, and a credit of $30 on each of the interest notes, reducing them to $105; that he showed her the deed of trust, which she read, and thereupon took the principal note reduced to $3500 and the six interest notes reduced to $105 each from Frederick, in payment of the amount due her from Frederick on account of his collection of the Gossel loan of $3500. Plaintiff further testified that when she took the notes,

she left the deed of trust with Mr. Frederick for the purpose of having him record it for her; that she returned some time later and got a certificate of title to the property and that Frederick gave her the recorder's receipt card, showing that the deed of trust had been filed for record, and that later on—some time in January, 1913, she went to Mr. Frederick's office and he gave her the deed of trust. This deed of trust was offered in evidence by plaintiff and is *ipsisima verba* the same as the deed of trust held and claimed by defendant Woestendiek. Each of these deeds of trust appear to have been executed by the Jessie Morris Realty & Investment Company; each is dated December 10, 1912; each is given to R. A. Bullock, trustee for W. E. Dearth; each describe the same property and each appears to be given to secure a principal note for $4500, due in three years after date, and six interest notes, each for the sum of $135, being for interest on the principal note.

Plaintiff testified that she drew $75 on account of the Gossel loan, on December 10th, from Frederick, and exhibited a receipt from him of that date. She also produced a number of receipts showing that she had received money from time to time from A. H. Frederick, which had been charged to her on Frederick's books. Plaintiff's receipts showed that she had been paid by Frederick $745. There had been, as it appears, $5 paid on the unpaid interest note, making it $100. Plaintiff testified that she got these advances from time to time from Frederick and when they amounted to the sum of an iterest note, she would deliver the interest note to him; that she had all of her dealings with Frederick and that the interest notes were never paid by anyone except A. H. Frederick.

Plaintiff further testified that she took her notes and the deed of trust and put them in her box where she kept her papers at home, and that she made no further inquiry touching these papers, except to collect the interest from Frederick, until there was an expose in the newspapers of Frederick's transactions, and that she

thereupon made inquiry and found that the deed of trust which she had on the property and which secured her notes, as a matter of fact, had never been recorded.

Plaintiff also testified that she knew that this was a building loan and knew that the buildings were being erected by the Jessie Morris Realty & Investment Company, who owned the property, as the certificate of title showed the title to that property at the time to be in the Jessie Morris Realty & Investment Company.

Walter Niehaus testified that he was bookkeeper and cashier for Frederick; that the office of the Jessie Morris Realty Company was that of Frederick; that he (witness) was secretary of that company, holding one share of stock to act as secretary; did not know "offhand" who owned the stock of the company but knew that Frederick owned the greater portion of it.

William E. Dearth testified that he had formerly been with Frederick; that the Jessie Morris Realty & Investment Company was a company of Frederick's. Witness was salesman for Frederick and sometimes party to deeds of trust; his name was used in the notes plaintiff held and was put there at Frederick's request, and he (witness) indorsed them; does not remember to whom he turned them over; evidently put them on Frederick's desk or took them to Frederick's bookkeeper; was a "straw man" to carry the title.

Morris Fernich testified that he was vice-president of the Jessie Morris Realty & Investment Company; that Frederick was president and Walter Niehaus secretary of that company; that its name was partly taken from his name; that he recalled Mrs. Foege coming there and that he showed her the blue prints and explained to her the nature and character of the improvements that the Jessie Morris Realty & Investment Company intended to put upon that property.

The deposition of A. H. Frederick was taken on behalf of plaintiff. He deposed that he had sold plaintiff a deed of trust on some property on Eads Avenue for $3500, the deed of trust originally securing a note for $4500 and interest notes for $135 each; that the

principal note was credited as of date December 10th with $1000; that he had delivered these notes to Mrs. Foege about the time they were dated; that the books of the Frederick Real Estate Company and of the Jessie Morris Realty & Investment Company were kept together, and the transactions which he carried on were conducted through the same set of books; had delivered to plaintiff a card showing a record of the deed of trust and had also delivered to her a certificate of title. The credit he spoke of had been made by his bookkeeper at his direction; no money was actually paid; he simply reduced the amount of the notes from $4500 to $3500 by having this credit entered. The deed of trust which he finally gave plaintiff was not the original deed of trust; the recorder's certificate on it was forged.

On cross-examination Frederick deposed that he did not remember just when he had sold the $4500 note secured by this deed of trust to the Edward K. Love Realty Company; did not remember just when Love had paid him the money for the note; his best recollection was that Love had paid him the money in a lump sum along in May, June or July after the buildings were completed or about completed, that is the $4500 for the note secured by the deed of trust which he turned over to Love; if his books showed that he got that money in March or April, then he was wrong as to his recollection of it having taken place in the summer. Asked to state whether he had disposed of the deed of trust to Mrs. Foege first or to the Edward K. Love Realty Company, he answered that his recollection was that he did not get anything from Love until after he had made the loan to plaintiff.

It is to be said of Frederick's deposition that it is very unsatisfactory and vague as to dates and details of the transaction, at the time he not having access to his books and the deposition having been taken June 24, 1915, in the Penitentiary.

This was substantially the evidence for plaintiff.

Defendant's evidence disclosed that the ''Gossell Loan,'' referred to by Mrs. Foege, was paid by the check of the Rosenbaum-Hauschulte Real Estate Company and was for $3629.83, and was made to the order of A. H. Frederick and deposited by him to his personal acount in the National Bank of Commerce in St. Louis. Defendant offered in evidence a transcript of Frederick's account with the National Bank of Commerce in St. Louis, covering the time from December 1, 1912, to September 1, 1913, being the entire period covered by the transactions involving the erection of the buildings on the property on Eads Avenue. An abstract of this account shows that on the 9th day of December, 1912, Frederick deposited $3704.83, and that his bank balance at the close of that day was $5656.42; that on January 23, 1913, and before any work whatever had been done toward the erection of the improvements on the Eads Avenue property, Frederick's account at the National Bank of Commerce had shrunk to $555.69.

There was also testimony to the effect that the Jessie Morris Realty & Investment Company had acquired the property on Eads Avenue by deed in November, 1912.

Edward K. Love testified that he conducted the negotiations for his company with the Jessie Morris Real Estate & Investment Company, represented by Frederick; that a principal note for $4500 and six interest notes for $135 each, together with the deed of trust, were brought over to his office by Frederick about the 10th or 11th of December, 1912, and that Frederick wanted an advance thereon; that when Frederick first commenced the negotiations for the loan in December, he (Love) pasted one of their stickers on the notes and deed of trust, over the name of A. H. Frederick, and that when Frederick came back later he (Love) told him that he could not advance any money until something had been done in the way of improvements there; that Frederick expressed some displeasure owing to the fact that the Edward K. Love Company had pasted a sticker with

their name on the notes and deed of trust and thereupon took them away. This was apparently in December, 1912.

Mr. Love further testified that Frederick came back about January 21, 1913, and showed that work had been undertaken, and that thereupon he agreed to make the loan and gave the Jessie Morris Realty Company a check of the Edward K. Love Real Estate Company for $2250, being one-half of the amount they were to advance on account of the building loan; that he watched the improvements from time to time as the work progressed and that some time later and on July 12, 1913, he gave the Jessie Morris Realty Company a check of the Edward K. Love Real Estate Company for $2160, being the balance due on said building loan, less the usual commissions. Mr. Love also testified that he went out several times a week during the time the buildings were in the process of construction and saw what was going on, and that Frederick, when he got the last check, brought him receipted bills for approximately $3000, showing what he had paid for labor and material used in the construction of the buildings, and exhibited to him other receipts showing payment in full for all of the work done for the Jessie Morris Realty Company.

Defendant Woestendiek testified that he bought the notes and deed of trust from Mr. Love some time in September, 1913, and that he paid for such notes the face value thereof, with accrued interest, amounting in all to $4576.50, and this was done on the 22d of September, 1913. Defendant also offered in evidence a deed from the Jessie Morris Realty & Investment Company to Louis Hudson, dated April 4, 1914, conveying the property on Eads Avenue, together with other property; showing also that the property was sold subject to a deed of trust for $4500, which was the deed of trust in controversy here.

It was not disputed that the Jessie Morris Realty & Investment Company had executed the deed of trust produced by plaintiff and that it had also executed the

deed of trust held by defendant and offered in evidence, as well as the two sets of notes. It also appears that the deed of trust ultimately delivered by Frederick to plaintiff, was a duplicate of the original and that the certificate of record thereon was a forgery, the genuine deed of trust being delivered to defendant Woestendiek.

The evidence of the building commissioners showed that they could not find anything prior to February 17, 1913, showing that they had had a report that any work had been done on 2905-7 Eads Avenue, and the last report, when they marked the building as completed, was August 4, 1913.

While the finding of fact has no binding effect in a suit in equity, we may use it and it is informative as a statement of the evidence. It corresponds closely to our own view of the evidence. The decree, which was entered, follows that and finds, first, that plaintiff is the owner of the debt secured by the deed of trust described in the petition and recorded, and that that deed of trust secured the notes offered in evidence by plaintiff. Second, that this deed of trust was delivered to plaintiff on December 10, 1912, and has been her property ever since that time but is now in the possession of defendant Herman Woestendiek. Third, that the notes offered in evidence by defendant Herman Woestendiek and described in his answer, are not the notes secured by the deed of trust, although of the same description as plaintiff's notes. The court accordingly entered a decree, in substance, that defendant Woestendiek deliver and surrender the deed of trust described to the clerk of the court within five days from date, and that the clerk deliver it to plaintiff, and that the security for the deed of trust, of date December 10, 1912, be applied to the payment of the balance due on the principal note for $4500, after application of credit for $1000, reducing it to $3500, and to payment of the unpaid semiannual interest note held by plaintiff, all executed by the Jessie Morris Realty & Investment Company and described. It is further ordered, adjudged and

and decreed that defendant Woestendiek be perpetually enjoined and restrained from enforcing or attempting to enforce the power of sale in the deed of trust, and that the trustee Bullock be enjoined and restrained from enforcing or attempting to enforce the power of sale contained in the deed of trust at the direction of Woestendiek, or of any person holding the notes now in possession of Woestendiek, and the defendants Woestendiek and Bullock be further restrained from applying or attempting to apply the security of the deed of trust to the payment of any set of notes corresponding in description to those set out in the deed of trust other than the set of notes held by plaintiff, and that Woestendiek and Bullock be perpetually enjoined from in any manner interfering with the plaintiff in the enforcement of the power of sale contained in the deed of trust, or in the application of the security of the deed of trust to the payment of the notes held by plaintiff. Costs were adjudged against plaintiff.

The defendant Woestendiek filed a motion for a new trial as well as one in arrest and saving exception to the overruling of these motions, has duly appealed.

## OPINION.

REYNOLDS, P. J. (after stating the facts as above.)—It is claimed by learned counsel for appellant that the respondent took the notes and deed of trust with full knowledge of all the facts in the case, and that on her own showing, she acquired her securities as the result of a fraudulent transaction. If this proposition is true, it would follow that plaintiff could not recover, but on a very careful consideration of the testimony we find nothing whatever to justify the conclusion reached by learned counsel for appellant. So far as the testimony shows, the respondent was an innocent and injured party, acting in entire good faith and without any suspicion, much less knowledge, of any fraud in it until long after she had made the loan, and until after the exposure of the transactions of Fred-

erick in other matters, when she became suspicious as to whether she might not be a victim, and commenced the investigation which resulted in her discovering the fraud that had been perpetrated on her, when she promptly instituted this action.

It is further urged by those learned counsel that plaintiff does not come into court with clean hands, but was a party to the fraudulent transaction. We are at a loss to understand how appellant can take any such position in the face of the evidence in the case. As said above, plaintiff was the innocent and injured party and her hands clean from any fraud.

It is further urged that inasmuch as the answer alleges, and the court found, that the money advanced by the Edward K. Love Realty Company was a building loan, made on the faith of the notes and deed of trust actually executed by the Jessie Morris Company, and the money was actually expended in erecting improvements on the land covered by the deed of trust, that he who expects equity must do equity, and that the court should have ordered an accounting and have allowed defendant Woestendiek the difference between the value of the vacant ground and the value of the improvements. We find no such theory in the pleadings or advanced at the trial. We cannot consider it here. [Riggs v. Price, not officially reported but see 210 S. W. 420.]

It is further urged by those counsel that the court took the deposition of Frederick offered by plaintiff "subject to objection" and never ruled on the objection, and that this testimony was inadmissible and the action of the trial court, taking it "subject to objection," is reversible error. It is true that it is the general rule that testimony should not be taken subject to objection and no ruling afterwards made thereon, but that rule does not apply here. The whole of Frederick's deposition is incorporated in the abstract and is before us, so that, irrespective of the action of the learned trial court on it, that is as to whether he accepted it and finally held it admissible, or excluded

it, it is in the record, subject to our examination in this, a suit in equity, and entitled to such consideration as we may conclude to give it, having in view the conviction of Frederick for a felony, which, fact is conceded, and which goes under the provision of section 6383, Revised Statutes 1909, not to his competency as a witness but as to the credibility of his testimony.

The fifth and final point suggested by learned counsel for appellant ˙ is that the court having jurisdiction over the parties should have made an order or decree touching the $1000, being the difference between plaintiff's notes and the funds held by defendant Woestendiek. We are unable to agree to this proposition. That was not a matter brought before the trial court. Nor do we here hold that Woestendiek is by this decree, shut off from any legal remedy on the notes he bought. That we do not here pass on.

Further attacking the finding of the trial court, it is urged that there was no evidence justifying the court in finding that A. H. Frederick and the Jessie Morris Realty & Investment Company were one and the same. There was evidence from one of the parties, as secretary, that he held one share of stock and did not know who owned the others but this witness, as well as two others, testified distinctly that the Jessie Morris Realty & Investment Company in point of fact was A. H. Frederick. The facts in evidence were sufficient to warrant this. A. H. Frederick kept but one set of books and those books contained not only his individual transactions and his transactions as a real estate agent but the transactions of the Jessie Morris Realty & Investment Company. This was sufficient to warrant the finding that Frederick and the Investment Company were one and the same.

The principle upon which this case was undoubtedly determined by the learned trial court is very thoroughly considered by our Supreme Court in the case of Southern Commericial Savings˙ Bank v. Slattery's Admr., 166 Mo. 620, 66 S. W. 1066. We think the principle decided and announced in that case not only

applicable, but controlling here. The same doctrine had been long before then announced by our Supreme Court in Hagerman v. Sutton, 91 Mo. 519, 4 S. W. 73. In that case it was held that one purchasing a note secured by a mortgage, takes the latter as an incident to the note; and where the note is transferred before becoming due, the purchaser takes it with all the presumptions in his favor of want of notice on his part, of any secret claims or trusts attached to the notes in favor of third persons, and the mortgage passes on the same footing as the note; that where one purchases a note in good faith, and before due, he cannot be affected by any subsequent notice of claims of third persons on the note. In line with the above cases there have been many decisions by our appellate courts. As one covering the matter very clearly and very applicable here, see Casner v. Schwartz, 198 Mo. App. 236, 201 S. W. 592, where it is held that when notes are fraudulently executed in triplicate with a deed of trust securing payment of the note, the one first negotiated will be considered the real note, entitled to priority in the lien of the deed of trust. A multitude of authorities are cited by the learned judge in that case and without repeating them here we refer to his decision.

It is true that Mr. Love and his clerk, Mr. Dudley, in rather vague testimony undertook to place the inception of the transaction between them and Frederick in November or December, 1912, but when their evidence is tested, even in itself and in the light of the time that they made the first payment on this note and turned over the loan, it is very clear that Mr. Love, through whom defendant Woestendiek became owner of these notes, had not seriously entertained the proposition of Mr. Frederick to let him have money on the notes and deed of trust until January, 1913. The first money that he paid on them was paid on January 21, 1913, the final payment not having been made until July of that year. So that, in point of time, plaintiff here was the owner of the note first

negotiated and that note and its interest notes will be considered the real notes and entitled to priority over the notes held by Woestendiek. So the learned circuit court held.

Our conclusion is, that the judgment of the circuit court is for the right party, is supported by sufficient evidence and should be sustained.

That judgment is accordingly affirmed. *Allen a*, *Becker, JJ.*, concur.

