### MEYER et al. v. RITTER.[*]

(Circuit Court of Appeals, Eighth Circuit. November 6, 1920.)

No. 5601.

1. **Appeal and error ☞1022(1)—Findings of master, confirmed by court, entitled to great weight.**

   The findings of the master, confirmed by the court, regarding the rights of a holder of mortgage notes, are entitled to great weight; but the appellate court must examine the record and reach its own conclusion, after giving findings the weight to which they are entitled.

2. **Mortgages ☞235, 249(3)—Security of deed of trust passes to indorsee of notes; release by mortgagee after assignment held ineffectual.**

   Where the holder of notes secured by deed of trust sold the notes, the security also passed to the buyers as an incident of the debt, and seller's attempted release thereafter of the deed of trust was unavailing, even in favor of a purchaser for value, and although there was no record evidence showing the transfer of the notes.

3. **Mortgages ☞235—First indorsed of duplicate notes carries the security.**

   In case of duplicate notes secured by the same deed of trust, the note first negotiated carries the security.

4. **Mortgages ☞249(3)—Indorsee of mortgaged notes not precluded from asserting rights against release by mortgagee.**

   Where the holder of notes secured by a deed of trust indorsed them to plaintiff, but did not record an assignment of trust deed, and later fraudulently released it, held, that plaintiff indorsee was not estopped from asserting her lien against a bona fide purchaser from mortgagor.

5. **Mortgages ☞249(3)—Indorsee of mortgaged notes not guilty of laches in asserting lien.**

   Where the holder of notes secured by a deed of trust indorsed them to plaintiff, and later fraudulently released the trust deed, thus permitting an innocent party to purchase from the mortgagor without knowledge of the outstanding lien, held, that plaintiff. who instituted suit some six months after learning of the purported release, was not guilty of laches.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
+Rehearing denied February 1, 1921.

**6. Vendor and purchaser ☜242—Defense of innocent purchaser is affirmative.**

The defense of innocent purchaser is an affirmative one, and the burden of proof is on the party asserting it.

**7. Mortgages ☜249 (3)—Unauthorized release not binding on holder of trust deed.**

A purchaser of notes secured by a deed of trust is charged with knowledge of what the record showed when she purchased the notes, but is not bound to watch the record from day to day to see that no unauthorized person attempts to release her deed of trust.

**8. Equity ☜72 (1)—Mere lapse of time does not constitute laches.**

Mere lapse of time does not constitute laches, unless something has occurred to make it inequitable to grant relief.

**9. Mortgages ☜249 (3)—Indorsee of notes secured by trust deed has right superior to bona fide purchaser from mortgagor.**

Where notes secured by a trust deed were purchased from the original holder, who purported to record an assignment of trust deed, but did not actually do so, and later fraudulently released trust deed of record, permitting the mortgagor to sell apparently unincumbered property to an innocent purchaser, *held*, that the rights of indorsee of mortgaged note were superior to those of bona fide purchaser.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit by Anna L. Ritter against Emma J. Meyer and others. Decree for plaintiff, and defendants appeal. Affirmed.

Henry D. Ashley, of Kansas City, Mo. (William S. Gilbert and Spencer F. Harris, both of Kansas City, Mo., on the brief), for appellants.

Edwin A. Krauthoff, of Washington, D. C. (William S. McClintock and Arthur L. Quant, both of Topeka, Kan., and Aaron Myers, of Salt Lake City, Utah, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. The question for decision in this case is as to whether appellants Anna S. and W. C. Howe are the owners of lot 12, block 1, Aberdeen addition to Kansas City, Mo., free and clear from the lien of a trust deed executed by and between Laura S. Eddy, party of the first part, and J. W. McCurdy, trustee, on May 21, 1912, and recorded in the office of the recorder of deeds for Jackson county, Mo., July 20, 1912, or whether said trust deed is a valid lien on said property for the amount secured thereby in favor of Anna L. Ritter, the appellee herein. The master, to whom the case was referred, made a report in favor of appellee, and, this report being confirmed by the District Court, a decree was entered accordingly. Emma J. Myer, one of the appellants, is a party to the proceedings by reason of having agreed on December 27, 1915, to protect the Howes against the claim of any person adjudged to be the owner of notes secured by the trust deed. The appellants have appealed from the decree so entered.

[1-3] The findings of the master, confirmed by the court, are entitled to great weight, and will be followed, if there has been no serious mistake made in the consideration of the evidence, or in the applica-

tion of the law to the facts found. This rule is elementary, but in order that we may determine whether there has been a serious mistake made in the consideration of the evidence, or in the application of the law, we must examine the record and reach a conclusion of our own, giving to the findings of the master and court the weight to which they are justly entitled. An examination of the evidence satisfies us that no serious mistake was committed by the master in finding the facts. The question at issue must be determined as one of law upon the facts found. The following are the material facts appearing in the record:

On and prior to May 21, 1912, one Thurmond was the owner of the property hereinbefore described; the legal title being in Laura S. Eddy, who held said title for Thurmond. Some time in February, 1912, Thurmond applied to Theodor Peltzer, a real estate agent at Kansas City, Mo., for a loan of $8,000 on said property, to be used in the erection of a six-apartment flat thereon. Laura S. Eddy was an employee of Peltzer, and executed notes and deeds of trust at his dictation, having no personal interest in the same. Some time before May 21, 1912, Peltzer told Charles J. Ritter and Anna L., his wife, that he intended to loan some money on the property in question, and asked them if they would take the loan from him. The Ritters thereupon examined the property. On May 21, 1912, Peltzer told the Ritters that he had made the loan on the property, and requested them to buy the loan from him, whereupon Charles J. Ritter gave Peltzer a check for $7,000, payable to Peltzer's order; Peltzer at the same time giving Ritter a receipt stating:

"For Laura S. Eddy loan of $7,000 on the northwest corner 39th St. and Olive St. (6 Apt. flat), dated May 21, 1912."

The property thus referred to in the receipt is the same as the property now in controversy. Peltzer at this time told the Ritters that the loan was to be $7,000. Some time before June 15, 1912, Peltzer told the Ritters that it would require $1,000 more to complete the flat then being erected on the property. The Ritters looked at the property again and said they would take the additional $1,000. On June 15, 1912, Charles J. Ritter gave his check, payable to Peltzer's order, for $2,915.64. This check included the $1,000 additional on the Eddy loan and payment for what was known as the Brinkman loan. These checks were paid in due course. When Ritter gave this check to Peltzer, the latter gave Ritter two negotiable notes, dated May 21, 1912, payable to the order of Peltzer, one for $1,000, payable two years from date, the other for $7,000, payable five years from date; also interest notes payable to Peltzer's order for the semiannual interest upon the two principal notes, both principal and interest notes being signed by Laura S. Eddy and indorsed by Peltzer without recourse. The notes were at once placed by the Ritters in a tin box, for which each had a key, and which most of the time was left in a vault in Peltzer's office. Peltzer had no access to the contents of the box, and the notes remained in the exclusive possession of the Ritters until the death of Charles J. Ritter November 15, 1913, and since that time have been in the manual

possession of Anna L. Ritter as the executrix of the last will of her husband.

In addition to these notes, on May 21, 1912, Laura S. Eddy executed three other series of notes, each series consisting of one note for $7,000 and one for $1,000, and all exactly like the ones now held by Anna L. Ritter. She also on the same date executed two deeds of trust, whereby she conveyed the property in question to J. W. McCurdy, as trustee, to secure the payment of a $7,000 and $1,000 note, such as the ones now held by Anna L. Ritter. The deed of trust was executed for the benefit of Peltzer or his indorsees, but the title of the land in question was conveyed to McCurdy, who executed the deeds of trust on his part and covenanted faithfully to perform the trust thereby created. These two deeds of trust were alike in every particular. One of them was duly recorded on July 20, 1912, as hereinbefore stated. When the Ritters paid for and received the notes, June 15, 1912, they received no trust deed. It was understood that the deed of trust would be recorded by Peltzer. Some time in August of the same year the Ritters received from Peltzer one of the trust deeds which had been executed by Laura S. Eddy, and it has remained in the possession of one or both ever since. This trust deed purported to have been filed in the recorder's office, and bore what appeared to be the certificate of the recorder as to its filing. This certificate, however, was a forgery. This paticular trust deed had never been recorded.

August 26, 1913, an exchange of property was agreed upon between Thurmond and Emma J. Meyer. The property in question was to be conveyed free of incumbrance by Laura S. Eddy, who still held the legal title, to said Emma J. Meyer, who on her part was to convey to Laura S. Eddy, lots in Santa Fé Place, Kansas City, Mo. This exchange was consummated on August 29, 1913. On this date Peltzer, Thurmond, and the attorney for Emma J. Meyer met at the office of the recorder of deeds. Peltzer had with him one of the series of notes which had been executed by Laura S. Eddy. He also had with him the trust deed which had actually been filed for record July 20, 1912, and the matured interest coupons. The notes bore the indorsement of Peltzer without recourse. Peltzer acknowledged satisfaction of the trust deed upon the margin of its record. The notes were produced and stamped by the recorder "Canceled," as also was the trust deed. Peltzer died September 29, 1915. Immediately thereafter rumors of the frauds committed by Peltzer in his lifetime became current. Anna L. Ritter employed an attorney to look after her securities, and learned that the trust deed purporting to secure the notes held by her had been released of record August 29, 1913. Until after Peltzer's death, neither Thurmond, the Ritters, nor Emma J. Meyer had any intimation that Laura S. Eddy had executed duplicate notes, or more than one trust deed. In December, 1915, Emma J. Meyer sold the property in question to Anna L. and W. C. Howe.

These being the facts, who is to suffer the loss caused by the fraudulent and unlawful act of Peltzer in satisfying of record the trust deed on August 29, 1913, Anna L. Ritter or Emma J. Meyer; the latter having agreed to save the Howes harmless. Manifestly this is not a con-

test between different holders of the notes executed by Laura S. Eddy. No person other than Anna L. Ritter is now before the court claiming to be the owner of any of the notes so executed. There was but one loan to Thurmond upon the property in question, and that was sold to the Ritters. Peltzer did not own the loan, and had no right whatever to satisfy the lien of the trust deed. It is not material that two trust deeds were executed, as no one is claiming a lien but Mrs. Ritter. They both secured the same debt, and one of them was duly recorded. The trust deed was valid as between Peltzer and the Ritters, though unrecorded. The act of recording was simply to give notice. The fact that the trust deed which was delivered to the Ritters some time in August, 1912, before Mrs. Meyer purchased the property, had a forged recordation certificate, did not affect its validity, as between the parties to the transfer. As the Ritters were the owners of the debt secured by the trust deed, the record of the trust deed that was recorded was notice to all the world of the lien created thereby, although the trust deed that was recorded was not delivered to the Ritters. The commercial world contains many bonds and notes held by persons who never saw the trust deed which secures their payment.

Under the facts as they appear in the record, the law seems to be clear that, when Peltzer sold the notes to the Ritters, the security of the deed of trust as an incident of the debt passed to the Ritters, and the attempted release thereafter by Peltzer was unavailing, even in favor of a purchaser for value; and this is true, even though there is no evidence of record showing a transfer of the notes. Carpenter v. Longan, 16 Wall. 271, 275, 21 L. Ed. 313; Batesville Inst. v. Kauffman, 18 Wall. 151, 154, 21 L. Ed. 775; New Orleans, etc., v. Montgomery, 95 U. S. 16, 18, 24 L. Ed. 346; Leahy v. Haworth, 141 Fed. 850, 73 C. C. A. 84, 4 L. R. A. (N. S.) 657; Weldon v. Tollman, 67 Fed. 986, 15 C. C. A. 138; Black v. Reno (C. C.) 59 Fed. 917, 919; Cudahy Packing Co. v. State National Bank, 134 Fed. 538, 67 C. C. A. 662; Laberge v. Chauvin, 2 Mo. 179; Potter v. Stevens, 40 Mo. 229, 233; Anderson v. Baumgartner, 27 Mo. 80, 86; Hagerman v. Sutton, 91 Mo. 519, 531, 533, 4 S. W. 73; Boatmen's Sav. Bank v. Grewe, 84 Mo. 477, 478; Mitchell v. Ladew, 36 Mo. 527, 533, 88 Am. Dec. 156; Lee v. Clark, 89 Mo. 553, 1 S. W. 142; Bank v. Carondelet R. E. Co. 150 Mo. 570, 576, 51 S. W. 691; Cooper v. Newell, 263 Mo. 190, 199, 172 S. W. 326; Wilkins v. Fehrenbach (Mo. App.) 180 S. W. 22, 24; Baxter v. Donnell, 69 Mo. App. 588, 590; Kelly v. Staed, 136 Mo. 430, 439, 37 S. W. 1110, 58 Am. St. Rep. 648; Cummings v. Hurd, 49 Mo. App. 139, 145; Bell v. Simpson, 75 Mo. 485, 490; Logan v. Smith, 62 Mo. 455, 459; Chappell v. Allen, 38 Mo. 213; Borgess Inv. Co. v. Vette, 142 Mo. 560, 574, 44 S. W. 754, 64 Am. St. Rep. 567; Lipscomb v. Talbott, 243 Mo. 1, 32, 147 S. W. 798; Potter v. McDowell, 43 Mo. 93, 98; Joerdens v. Schrimpf, 77 Mo. 383; Morrison v. Roehl, 215 Mo. 545, 553, 114 S. W. 981; Hower v. Erwin, 221 Mo. 93, 100, 119 S. W. 951; Landau v. Cottrill, 159 Mo. 308, 60 S. W. 64; Lanier v. McIntosh, 117 Mo. 508, 518, 23 S. W. 787, 38 Am. St. Rep. 676; George v. Somerville, 153 Mo. 7, 54 S. W. 491.

The case of Foege v. Woestendiek, 201 Mo. App. 382, 212 S. W. 411,

was a case of duplicate notes and duplicate trust deeds. The plaintiff in that case purchased one of the duplicate notes and left the deed of trust with the land agent to be recorded. This deed in fact was never recorded. The plaintiff, however, was given a deed of trust upon which the recorder's certificate as to its recordation was forged. Another note was later sold to the defendant, and the deed of trust, which had been properly recorded, was delivered to him. Plaintiff was held entitled to the security of the recorded instrument. In the case of duplicate notes the note first negotiated carries the security. Kirkpatrick v. Reed (Mo. App.) 204 S. W. 1135; Ricketts v. Finkelston (Mo. App.) 211 S. W. 391, 397; Saving Bank v. Slattery, 166 Mo. 620, 66 S. W. 1066; Quinn v. McCallum, 178 Mo. App. 241, 165 S. W. 1115; Hagerman v. Sutton, 91 Mo. 519, 4 S. W. 73; Casner v. Schwartz, 198 Mo. App. 236, 201 S. W. 592.

[4-6] The important question in the case, however, is not altogether one of notice. Whatever notice the trust deed which was recorded gave, Mrs. Meyer had, and as Mrs. Ritter was the owner of the debt the trust deed was notice that it had not been paid. The real question for decision is as to whether, under the evidence, the production of the series of notes and the trust deed and the acknowledgment of satisfaction on the record by Peltzer bound Mrs. Ritter, or in other words was a lawful satisfaction of the lien of the trust deed. Counsel for appellants, assuming that what has been said is the law, maintain that Mrs. Ritter so conducted herself as to create in Peltzer indicia of ownership of the notes and trust deed, and is therefore estopped from asserting the same as a valid lien on the property in question. A careful reading of the record discloses no incident where, by word or deed, Mrs. Ritter ever acted inconsistent with her present position with reference to the notes and deed of trust. Moreover, there is no evidence that appellants, or either of them, ever acted on any act or declaration of Mrs. Ritter. The fraudulent and unlawful act of Peltzer in satisfying the lien of the trust deed was wholly unauthorized by Mrs. Ritter, and any presumptions that may be indulged in must be against the granting of authority to Peltzer to commit a fraud, or to act against her interest.

It is further claimed that Mrs. Ritter has been guilty of laches. It was found by the master that she did not know of the attempted satisfaction of the trust deed until after Peltzer's death in September, 1915, and this proceeding was commenced in March, 1916. The Howes purchased in December, 1915, and took an agreement from Mrs. Meyer to protect them against claims of the very kind that Mrs. Ritter is now asserting. So far as they are concerned, they must be held to have had notice of facts which, if investigated, would have led to a discovery of the fraud committed by Peltzer. The defense of innocent purchaser is an affirmative defense. The burden of proof is upon the party setting up the defense. Boon v. Chiles, 10 Pet. 177, 9 L. Ed. 388; Wright Blodgett Co. v. U. S., 236 U. S. 397, 405, 35 Sup. Ct. 339, 59 L. Ed. 637; Stonebraker-Zea Cattle Co. v. U. S., 220 Fed. 99, 135 C. C. A. 96; U. S. v. Krueger, 228 Fed. 97, 142 C. C. A. 503.

[7-9] We cannot agree to the proposition that Mrs. Ritter had con-

structive notice of the fraudulent discharge of the lien of trust deed from the time it was made. The discharge being unlawful and unauthorized, there was no law requiring it to be placed of record. Mrs. Ritter was charged with knowledge of what the record showed when she purchased the notes; but she was not bound in law or morals to watch the record from day to day, that she might learn what some orbitless captain of high finance outside of her chain of title might do. Moreover, mere lapse of time does not constitute laches, but in addition thereto something must have occurred to make it inequitable to grant the relief prayed for. In our opinion there is no laches shown by the evidence.

Counsel for appellants contend, further, that this is a case for the application of the rule that, when one of two innocent persons must suffer from the acts of fraud of a third person, the one of the two persons whose acts or conduct has been such as to put it within the power of the third person to commit such a fraud is the one of the two persons who must suffer from the result of such acts. We recognize the rule as stated, and have no fault to find with the cases cited illustrating that rule. If we could find that it was through the negligence of Mrs. Ritter or the Ritters that the record of the recorder of deeds was permitted to give notice to the world that the lien of the trust deed was satisfied, we would hesitate to allow her, in face of her own carelessness, to enforce the lien of the trust deed against a bona fide purchaser taking his title on the faith of the record. But this is not such a case.

On the whole record, we are satisfied that the decree below was right, and must be affirmed.

It is so ordered.